Oct. 1831.

Executors of
Conovers
v.
Conover et al.

---

JOSEPH SHANNON v. JOHN MARSELIS et al.

After a mortgage is given, the ultimate payment thereof cannot be defeated by any conveyance of the mortgaged premises that may be made by the mortgagor.

But where new rights or interests have originated since the execution of the mortgage, although the mortgagee is no party to them, and they may delay him in the prosecution of his remedy; yet the court will protect them, and direct the mortgage to be paid out of such parts of the property as may be most equitable to all parties concerned.

Where a mortgagor, after giving a mortgage, sells part of the mortgaged premises to a third person for a valuable consideration; justice demands that the residue of the premises in the hands of the mortgagor should satisfy the mortgage debt; and the purchaser acquires a right, even against the mortgagee, to compel him to have recourse to such residue for the satisfaction of his debt.

If the mortgagor sells a second parcel, this second purchaser acquires rights as against the mortgagor and mortgagee; rights also arise as between the first and second purchasers, as to their liability to the mortgage; all which the court will notice and protect. If the property remaining unsold in the hands of the mortgagor is sufficient to pay the debt, both purchasers will be protected; if insufficient, the last purchaser contributes first, and if there still be a deficiency the first purchaser may be called on: thus the last purchaser is first liable.

It is the policy and duty of the court to settle all claims between the parties, in one suit, if possible; and upon a question arising between two co-defen-

Oct. 1831.

Shannon
v.
Marselis et al.

dants, where the matter is distinctly before the court, upon the pleadings and proof between the complainant and defendants in the case, the court will decide the rights of the defendants as between themselves.

The assignee of a bond and mortgage holds them subject to the same equity that existed against them in the hands of the mortgagee.

Where a vendor conveys land by deed with covenant of warranty, which is subject to a mortgage; if the amount of the mortgage is raised out of the premises conveyed, and paid to satisfy the mortgage, the vendee can immediately recover it back, by action against the vendor, on his covenant.

So if the vendor was prosecuting the vendee, on his bond for purchase-money, this court would enjoin him, and compel him to appropriate the money so as to discharge the incumbrance against which he had covenanted.

Where a vendor conveys land which is subject to a prior mortgage, by deed, with covenant of warranty; and the vendee gives a mortgage to the vendor for purchase-money, which the vendor assigns to a third person, and a bill is filed upon the prior mortgage, against the vendor, vendee and assignee of the second mortgage; if any part of the premises so conveyed is taken to satisfy the first mortgage, the vendee has a right to have so much deducted out of his purchase-money, or the mortgage given by him for purchase-money, in the hands of the assignee.

Where there is a mere allegation of an outstanding title or incumbrance, this court will not interfere, but will leave the party to his remedy on the covenant; but where there is an eviction, or even an ejectment brought, it will interfere.

Thus where A. and B. were joint owners of two lots, a small lot and a larger lot, and in 1821 gave a mortgage on both lots to M., to secure three hundred and sixty-five dollars: in 1823 B. conveyed his half of both lots to G.; in the same year A. conveys his half of the large lot to G., and G. conveys his half of the small lot to A., whereby A. became sole owner of the small lot, and G. of the large lot; G. having thus become the purchaser of the large lot, by conveyance both from A. and B., the original owners and mortgagors, had a right to throw the payment of the mortgage to M. on the small lot; and that lot must pay it if sufficient, if not the large lot must be resorted to to make up the deficiency.

After this G. sold ninety feet of the large lot to R., and fifty feet to P.; and in 1825 sold the residue to C. Upon this the same right to protection vests in these purchasers. In the event of the small lot being insufficient to pay the first mortgage, those parts of the large lot sold to R. and P. will be protected from sale until the residue sold to C. is disposed of: that being the last sold is first liable.

The residue of the large lot was sold and conveyed by G. to C., with covenant of warranty, and C. on the same day mortgaged it to G. for five hundred and fifty dollars. This mortgage was assigned by G. to E., and on the death of E. passed to his executors. If the small lot prove insufficient to satisfy the first mortgage, and any part is to be raised out of the residue of the large lot, C. the purchaser, by virtue of his covenant, is entitled to have

that amount deducted from his mortgage, given to G. for purchase-money, in the hands of his assignee.

In 1827 A. again mortgaged the small lot to V. for one hundred and sixty dollars. V. assigned this mortgage to S. the complainant, who in 1829 also procured an assignment of the first mortgage given to M. in 1821 on both lots, and thereupon filed his bill to foreclose; all the mortgages being yet outstanding. This third mortgage is a lien on the small lot only, and can only come in for the surplus, in case the small lot should produce more than sufficient to satisfy the first mortgage.

This right of the purchasers to protection is not personal, but attaches to the purchaser of the property, whoever it may be; it is connected with the land itself, and passes with it.

JOHN Marselis and Harman Marselis, being seized of two lots of land in the township of Aquackenonck, and county of Essex, one containing six acres and forty hundredths of an acre, and the other thirty-two hundredths of an acre, mortgaged them both to John Marselis, on the 1*st day of September*, 1821, for three hundred and sixty-five dollars.

On the 13*th May*, 1822, *Harman Marselis* conveyed his moiety or one half part of both lots, or the equity of redemption therein, to *Henry Griffin*, for two hundred and nine dollars.

On the 1*st August*, 1823, *John Marselis* conveyed his moiety or one half part of the larger lot (six acres and forty hundredths of an acre) also to *Henry Griffin*. Griffin thus became the legal owner of the whole of the larger lot, and of one half of the smaller one, subject to the mortgage to Marselis.

On the same 1*st August*, 1823, *Griffin* conveyed all his interest in the smaller lot (thirty-two hundredths of an acre) to John Marselis, whereby he again became the legal owner of the smaller lot. While owning the larger lot of six acres and forty hundredths of an acre, Griffin sold from it a lot of ninety feet to Robert Morrell, and another lot of fifty feet to Paul Vanderbeck.

On the 24*th September*, 1825, Griffin sold the lot of six acres and forty hundredths of an acre to *Robert Carrick*, for eight hundred dollars; excepting out the two small parcels he had before sold to Morrell and Vanderbeck.

On the *same day*, *Carrick* gave a mortgage to *Griffin* on the same lot, for five hundred and fifty dollars. This mortgage was

afterwards assigned by Griffin to Morrell, and by him to William Ellison, whose executors now hold it.

On the second day of August, 1827, *John Marselis* gave a mortgage to *Adrian Vanhouten*, on the smaller lot, for one hundred and sixty dollars, and Vanhouten afterwards assigned it to Shannon, the complainant.

And on the 2d March, 1829, Shannon procured from *Marselis* an assignment of the original bond and mortgage given by John and Harman Marselis on the whole property in 1821.

All the mortgages are outstanding. This bill is filed by Shannon, the assignee of the *first* and *third* mortgages, for a foreclosure and sale of the mortgaged premises. The executors of Ellison, who hold the *second* mortgage, are made parties, as well as all others interested.

Morrell and Carrick, the purchasers, and the executors of Ellison, answered. The cause was heard on the bill, answers and proofs.

*B. W. Vandervoort,* for the complainant. This case presents important questions as to the rights of these several mortgagees and purchasers. We insist that the whole premises, the small lot and the large lot, are liable to satisfy the first mortgage, and ought to contribute in a rateable proportion, according to the value of the property. Where lands are mortgaged for the payment of a debt, the burden should rest on every part : 3 *P. Wms.* 98, 99 ; 1 *John. C. R.* 55, 409, 425 ; 2 *Atk. R.* 383 ; 1 *Bro. C. C.* 92 ; 2 *Bro. C. C.* 219 ; 3 *Wils. R.* 275 ; 2 *Blac. C.* 160, (*n.* 4) ; 6 *Ves. jr.* 328. John Marselis and Harman Marselis were tenants in common of both lots ; each had a right to convey his own moiety. They were both liable, and by the mortgage each of their shares was charged with the mortgage debt. We insist that the purchasers under them stand in the same situation, and that the subsequent purchasers are equally bound.

The defendants set up the principle, that where there is a conveyance of part of the mortgaged premises, the residue must first be exhausted to satisfy the mortgage. This would operate injuriously on John Marselis. He owns the small lot : is that to be charged with the whole amount of the first mortgage, when the

large lot was equally bound ? If John Marselis, individually, had owned the whole property at the time the first mortgage was given, the principle contended for might apply ; but as he was the owner of a moiety only, and liable for a moiety of the mortgage debt, we insist that it does not.

If the first mortgage is to be charged wholly on the small lot, and the large lot is to be exempt, the whole proceeds of the small lot may be exhausted to satisfy the charge ; and the *third* mortgage, given on that lot alone, and now held by the complainant, defeated. Carrick sets up, that he had no actual notice, but only constructive notice, of the first mortgage. That is sufficient. We contend that the true course would be, that the whole of the mortgaged premises should contribute proportionably to satisfy the first mortgage, and the surplus proceeds of the small lot be applied to satisfy the third mortgage. This would be equal justice to all.

*E. Vanarsdale, jun.*, for Robert Carrick. The complainant, holding the first and third mortgages, seeks to make both lots contribute to pay off the first mortgage, and then apply the surplus proceeds of the small lot to the payment of the third mortgage ; by which he might get his money on the first and third mortgages, and exclude the second. This would do injustice to purchasers, and to the holders of the second mortgage. The cases cited for the complainant, however correct in principle, do not apply here. We insist that the complainant must first resort to the small lot, which the second mortgage does not cover, to satisfy the first mortgage. On the principle of two liens, or a lien on two properties, Griffin or his assignees can only take one lot, the large lot, having a lien on that only. The complainant must resort to the small lot to satisfy the first mortgage. Carrick is a subsequent bona fide purchaser, and entitled to protection : 19 *John. R.* 486, 492 ; 1 *John C. R.* 412 ; 4 *John. C. R.* 17 ; 7 *John. C. R.* 174, 184 ; 1 *Hopk. R.* 460.

If the small lot be sold and bring enough to satisfy the first mortgage, it is well ; if not, then the question arises between Carrick as purchaser, and the executors of Ellison as assignees of the mortgage on the large lot. As to this, the matter is fully before the court, and they will do justice to all parties, even be-

53

tween co-defendants: 2 *Sch. and Lef.* 709, 718; 2 *Ball and Bea.* 271.

Griffin sold to Carrick, and gave a warranty deed for the large lot, when he took the second mortgage. The covenant of warranty must be fulfilled before the mortgage is paid: 1 *John. C. R.* 301; 3 *P. Wms.* 306. It is true, the mortgage has got into the hands of the executors of Ellison; but they are assignees of Griffin, and stand in no better situation. The assignee of a bond and mortgage, takes it subject to all the equity of the mortgagor: 1 *John. C. R.* 479, 499. Carrick admits he gave the second bond and mortgage, and that all the money is due upon it; but insists, that if his lot has to pay any part of the first mortgage, so much should be deducted out of his mortgage in the hands of the executors of Ellison.

*P. Dickerson*, for Morrell and the executors of Ellison. The interest of my clients and Carrick are identical as to the first point; that is, that the small lot should be sold first, to satisfy the first mortgage. As between Ellison and the complainant, the case is this: two men mortgage, and then sell off a part of the mortgaged premises. We say that the part retained ought to be first sold and applied to satisfy the mortgage. The fact that the mortgagors held as tenants in common, cannot alter the principle.

Morrell's case is peculiar: he first purchased of Griffin a part of the large lot; another part was sold to Vanderbeck, and the remainder to Carrick. If the small lot is insufficient to pay the first mortgage, we insist that the residue of the large lot which was last sold, to Carrick, should be first applied to satisfy the deficiency.

The counsel of Carrick call upon the court to settle, incidentally, the matter between Carrick and the executors of Ellison. How can this be done? It is not in issue. The case in *Scho. and Lef.* shows that the matter must come up on the pleadings between the complainant and defendants, not between two defendants alone. We apprehend this matter cannot be settled in the present case.

*T. Frelinghuysen,* for the complainant. Here are three mortgages ; the first covers both lots, the second covers the large lot, and the third the small lot. According to the defendants' doctrine, the third mortgage must be cut off. The two Marselises, who gave the first mortgage, were tenants in common ; their title was several ; and although they joined, it was the same as if they had given several mortgages to secure the same debt. Harman Marselis sells out his moiety of both lots to Griffin. Griffin then stood in his shoes. John Marselis and Griffin became tenants in common ; each owned half of the mortgaged premises, and each half was equally pledged for the payment of the debt. Harman Marselis, by his sale to Griffin, could not throw the whole burden of the mortgage on the moiety of the property belonging to John. It is not the case of a mortgagor selling a part of the mortgaged premises and retaining the residue ; but of two joint mortgagors of their several property, and one of them selling out his whole share of the mortgaged premises to a third person : in such case the purchaser must take it subject to the mortgage. It is said that Griffin afterwards made conveyances, but he is not the mortgagor ; the doctrine does not apply to the vendee of the mortgagor : it is a personal equity, confined to the mortgagor only.

It is insisted that there are two funds : that the junior creditor has a lien on one only, and therefore the court are to regulate the distribution. The general principle in such cases is a salutary one, but *third persons* are not to be injured. The contest must be between two creditors : here are three creditors, and the adjustment must be on different grounds. The answer does not make out a case in which the court can apply the rule. If a third creditor is to be affected, we insist, the rule cannot, and ought not to be applied. If we are wrong here, there is another principle that ought to relieve us. Griffin became possessed of both moieties of the large lot ; the tenancy in common, the interests and responsibilities became united in him. The half of that lot, at least, was liable in his hands ; and he could not exonerate it by conveying to John Marselis the half of the small lot. It presentsa new case. Again, we have regard to the registry

Oct. 1831.

Shannon
v.
Marselis et al.

of mortgages; the property ought to contribute rateably, and the only safe rule is the equity springing out of the records.

THE CHANCELLOR.    There can be no difficulty or question as to the right of recovery on the part of the complainant, so far as the first mortgage is concerned.    That mortgage covers the whole property, which is abundantly able to satisfy it.    The question is, in what way shall it be satisfied, consistently with the equitable rights of third persons having subsequent vested interests.

Carrick, one of the defendants, owning the six acres and forty hundredths of an acre lot, contends that the first mortgage should be raised or satisfied out of the smaller lot, to the exclusion of the larger; and that the larger lot should only be resorted to in case of a deficiency.    He sets out in his answer, that when he purchased of Griffin, and gave the mortgage to him which is now in the hands of Ellison's executors, he was totally ignorant of the incumbrance that was upon it, in the hands of Marselis; that he took a deed with covenants of warranty; and that, if any of the proceeds of the six acres and forty hundredths of an acre lot should be wanting to satisfy the first mortgage, that it must be deducted from the amount of the mortgage given by him to Griffin, and which is now in the hands of Ellison's executors, as assignees of Griffin; and upon those principles proffers his readiness to pay what is equitably due on the first mortgage, after the smaller lot is first appropriated to its discharge.

Robert Morrell, another of the defendants, also contends, that the small lot should first be sold to pay the original mortgage, and that the larger lot should be resorted to only in case of a deficiency; and in such case, that the part of the lot which he purchased of Griffin should not be sold, until the part which still remains in Carrick's possession is disposed of.

The executors of Ellison agree with Carrick and Morrell, that the smaller lot must first be sold and appropriated, and in case of a deficiency that the six acres and forty hundredths of an acre lot be sold to pay the balance; but they deny the right of abatement set up by Carrick, and insist that the residue of the proceeds of the six acres and forty hundredths of an acre lot ought

to be appropriated to the discharge of their mortgage, without any deduction.

On the other hand, the complainant insists that the doctrine of contribution set up by the defendants is altogether too refined, and cannot apply to this case ; that all the mortgages were recorded regularly, and if there is any loss it should be borne rateably.

These various conflicting interests and claims, it is the province and pleasure of this court to settle among all the parties, on just and equitable principles.

As to the first mortgage, it appears to me there can be no difficulty. Both lots are bound for the payment to the mortgagee or his assigns, and the ultimate payment cannot be defeated by any sale or conveyance that may be made of them by the mortgagors. Nevertheless, where new rights or interests have originated since the execution of the mortgage, although the mortgagee is no party to them, and they may tend to delay him in the prosecution of his remedy, yet the court will protect them ; and will direct the mortgagee to be paid out of such parts of the property, and in such way, as may be most equitable to all parties concerned.

Where a man gives a mortgage upon his property, and after having done so sells a part of it to a third person for a valuable consideration, justice demands that the residue of the mortgaged premises, in the hands of the mortgagor, should satisfy the mortgage debt ; and the purchaser acquires a right even against the mortgagee, so far as to compel him to have recourse to such residue for the satisfaction of his debt, if it shall be sufficient for that purpose. If the mortgagor sell a second parcel, the second purchaser immediately acquires rights as against the mortgagor, and also as against the mortgagee, and rights also accrue immediately between the first and second purchasers, as to their liability to the mortgagee ; all of which the court will notice and protect. If the property remaining unsold in the hands of the mortgagor is sufficient to pay the debt, both purchasers will be protected. If insufficient, the last purchaser contributes first, and if there be still a deficiency, then the first purchaser may be called on and is liable. Thus the last purchaser is always first liable. This is the settled rule of this court, and is founded on plain principles of justice.

Apply the rule to this case, and it appears that the first mortgage must be paid out of the smaller lot, if it will pay it, and if not the larger one must pay the deficiency.

Harman Marselis and John Marselis were the owners of the mortgaged premises, and made the mortgage to Marselis, which is known by the name of the *first* mortgage. They were tenants in common. By separate conveyances, and at different times, they sold their interest in the larger lot, to Henry Griffin, so that on the 1st of August, 1823, he was the purchaser of that lot for a valuable consideration, having title from both. He then had a right to protection, and to throw the mortgage debt upon the residue of the mortgaged premises. Having this right, he sells a small part of the six acres and forty hundredths of an acre lot to Morrell, and a small part to Vanderbeck, and the residue to Carrick. The same right to protection vests in these purchasers; for it is not personal, as was supposed at the bar, but attaches to the purchaser of the property, whoever he may be, and is connected with the property itself.

It was forcibly urged, that however this rule might apply to ordinary cases, it could have no application here; for that the mortgagors were tenants in common; that they had a right to sell at different times, and by separate conveyances, which was the case here; and that it would be unjust, where two tenants in common made a common mortgage, that one might sell out all his interest, and thereby throw the whole burden of the incumbrance upon his co-tenant. There is much justice in the argument, but in the view I take of this case, I am not called upon to decide how far such a state of things might call for a modification of the rule. I do not say that when, in 1822, Harman Marselis sold his moiety of the six acres and forty hundredths of an acre lot to Griffin, he thereby threw the mortgage on that part which still belonged to the other mortgagor, his co-tenant; but when, in 1823, John Marselis conveyed, in like manner, his moiety to Griffin, then he had a complete title from both. It was the same as though there had been but one mortgagor, and he had made the conveyance, or as though both the tenants in common had joined in a common deed; and then it was as between the purchaser and the mortgagors, there accrued an equity in favor

of the purchaser, that the mortgage money should be raised out of the residue of the mortgaged premises unsold.

There is some confusion or uncertainty as to the mode in which the title to the smaller lot has been transmitted. The bill states, that Harman Marselis conveyed to Griffin his interest in both lots, and it states also that John Marselis made to him a similar conveyance of all his interest. But both answers deny that John Marselis conveyed to Griffin the half of the small lot, and as there is no proof of it I take it for granted that the fact is not so. Then Griffin never had such a title for that smaller lot as would place it on the same footing with the other lot, and compel it to contribute rateably to the payment of the mortgage. He had a title for an undivided moiety from one of the tenants in common, the original mortgagors ; but as before hinted, it is doubtful whether that could operate to throw the whole burden on the other moiety in the hands of the co-tenant, and if it did not, the exemption attached only to the larger lot. Independently of that, it will be seen, that before any rights accrued to third persons in the smaller lot, it came into the possession of John Marselis, one of the original mortgagors, in whose favour no equity could attach as against those holding other parts of the mortgaged premises under the mortgagors. Whichever way, therefore, it is taken, it appears that the smaller lot is first liable, and that the first mortgage must be satisfied out of that, if it will pay it, and if it will not then the six acres and forty hundredths of an acre lot must be resorted to to make up the deficiency.

In such event, the two small parcels sold by Griffin to Morrell and Vanderbeck will be exempted from sale till that part which Griffin conveyed to Robert Carrick is disposed of, that being the last sold by Griffin, and of course, upon the principle already laid down, the first liable. In this mode the first mortgage will be paid.

If it should be necessary to resort to the larger lot, there is a question arising between Carrick and the executors of Ellison. They are co-defendants. The mortgage held by the executors of Ellison is before the court, upon the pleadings. The executors contend, that the proceeds of the sale of the larger lot, after satisfying the first mortgage, shall be appropriated to pay their

mortgage, given by Carrick to Griffin, and by Griffin assigned to Morrell, and by Morrell to Ellison in his life-time. Carrick, on the other hand, insists, that as he purchased from Griffin with covenants of warranty, if any part of the property conveyed to him is taken to satisfy a prior mortgage, that so much shall be deducted out of the purchase money, or out of the mortgage given for the purchase money, which is the same thing.

This is a matter simply between co-defendants, and it was stated on the argument that this was not the proper time to adjust it; that the rights of these two parties, as between themselves, were not regularly in issue before the court in this suit. I cannot concur in this opinion. It is the policy and duty of this court to settle and adjust all claims between the parties in one suit, if possible. In *Chamley* v. *Dusaney and al.*, 2 *Sch. and Lef.* 718, Ld. Eldon, on appeal, said, it was objected to the decree before the court that it was between defendants, and that that was contrary to the practice of the court of equity, because there could be no cross-examination between co-defendants : but he held, that where a case was made between defendants by evidence arising from pleadings and proofs between plaintiffs and defendants, a court of equity was not only entitled to make a decree between the defendants, but bound to do so. The defendant being chargeable, has a right to insist that he shall not be liable to be made a defendant in another trial for the same matter that may be then decided between him and his co-defendant, and the co-defendant may insist that he shall not be obliged to institute another suit for a matter that may be there adjusted between the defendants. See also *Harris* v. *Ingleden*, 3 *P. Wms.* 99. Here the matter is distinctly before the court upon the pleadings and proofs. The executors of Ellison claim the whole amount of the mortgage. Carrick insists that, in a certain event, there should be a deduction. He produces before the court the deed from Griffin to himself, with full covenants of seisin and warranty, and against this no counter-evidence is brought forward.

The question then arises, has Carrick any equity against the executors of Ellison, who is the assignee of Griffin? It must be conceded that they hold the bond and mortgage subject to the same equity that existed against it in the hands of the mortgagee;

that is all the equity of the obligor. The principle appears to be well settled : *Coles* v. *Jones and al.*, 2 *Ves.* 692, 765 ; *Hill* v. *Caillovel*, 1 *Ves.* 122 ; *Hinton* v. *Benson*, 1 *Plowd.* 497 ; *Mathews* v. *Walwyn*, 4 *Ves.* 118. In 2 *Johns. Rep.* 612, Kent, sitting in the court of errors, said, speaking of the assignee of a bond and mortgage, that he took them subject to every defence that existed against them in the hands of the obligee : that the obligor could not be prejudiced by the assignment ; and that the registry acts had nothing to do in the case. In the case of *Murray* v. *Lylburn*, 2 *John. C. R.* 441, the same judge, sitting in chancery, again recognizes and defends the principle, remarking, that " the assignee can always go to the debtor and ascertain what claims he may have against the bond or other chose in action which he is about purchasing from the obligee." And the master of the rolls, sir Jos. Jekyll, in the case cited from *P. Wms.* says, " that it was incumbent on any one who took an assignment of a bond, to be informed by the obligor, concerning the quantum due upon such bond, which if he neglected to do, it was his own fault, and he should not take advantage of his own laches." See also *Livingston* v. *Dean and al.*, 2 *John. C. R.* 479 ; *Scott* v. *Shreave*, 12 *Wheat.* 608 ; *United States* v. *Sturgis and al.*, 1 *Paine*, 525.

The executors of Ellison, standing then in the place of Griffin, we are to consider whether if Griffin was attempting to enforce this mortgage against Carrick, Carrick would be entitled to any relief in consequence of the outstanding incumbrance, and the covenant in his deed. It is very evident, that if the amount of the mortgage money is raised from Carrick's property, and paid to satisfy the mortgage, that Carrick can immediately recover it back by action on the covenant. There can be no good reason assigned why there should be this circuity of action ; but a very good one why there should not ; which is, that the money might be lost to Carrick altogether, he having no security but the covenant. If Griffin was prosecuting at law on the bond, this court would certainly injoin him, and compel him to appropriate the money so as to discharge the incumbrance against which he had covenanted. In *Johnson* v. *Gree*, 3 *John. C. R.* 546, where the vendee gave a bond and mortgage to secure the purchase-

*Oct. 1831.*

Shannon
v.
Marselis et al.

54

Oct. 1831.

Shannon
v.
Marselis et al.

money, and an action of ejectment was afterwards brought against him by a person claiming a paramount title, and the vendor brought a suit on the bond and advertised the premises for sale under a power in the mortgage; the proceedings on the bond and mortgage were ordered to be stayed until the action of ejectment was determined, and the farther order of the court. Where there is a mere allegation upon an outstanding title or incumbrance, the court will not interfere, but leave the party to his remedy on the covenant; but where there is an eviction, or even an ejectment brought, it will interpose. In this case the first mortgagee is prosecuting his claim; the second one is before the court and asks to be paid what is due, and also the third. All parties are here, and justice can be done.

That Carrick is entitled to relief I can entertain no doubt. If any part of his property has to be sold to pay off the first mortgage, he is entitled to have the amount deducted from his mortgage to Griffin. In *Jourvill* v. *Narish*, 3 *P. Wms.* 306, it was held, that when a man purchases an estate and pays part, and gives bond for the residue, notice of an equitable incumbrance before payment, though after the giving of the bond, was sufficient to stop payment, and to entitle the obligor to relief in equity against the bond; and this was declared to be the rule, though the purchaser had *actual* notice of the incumbrance before the purchase. The constructive notice furnished by the registry, cannot affect the equity between the vendor and the purchaser; and we have seen that as to it the executors of Ellison stand in no better situation than the mortgagee himself.

It is unnecessary to say any thing as to the third mortgage. It is a lien on the smaller lot only, and can only be paid in case the proceeds of that lot amount to more than sufficient to satisfy the first mortgage.

Let an account be taken of the amount due on each of the mortgages. Let the smaller lot be first sold and the proceeds applied to the first mortgage; and the surplus, if any, to the third mortgage. If the first mortgage be not satisfied by the sale of the smaller lot, let that part of the six acres and forty hundredths of an acre lot in Carrick's possession, be sold to satisfy the residue, and also to pay the balance that may be due on the second

mortgage, after ▓▓▓g a deduction of so much as may go to satisfy the said re▓▓▓▓ on the first mortgage.