## MARCH TERM, 1872.

ATWATER and wife, appellants, and UNDERHILL, respondent.

1. An agreement between a creditor and his debtor that the former shall take the business of the latter and be responsible for and pay all the business debts, operates as a release of a debt of such creditor which is shown to be a debt connected with such business.

2. The release of a debtor from all liability for a debt, is also a release and discharge of the mortgage of a third person given as collateral for such debt.

3. A mortgage given for a specific purpose must be applied exclusively to that purpose, and any other disposition of it will be a fraudulent misappropriation, against which the mortgagor will be entitled to relief.

4. A husband has no power, by virtue of the marital relation, to dispose of his wife's separate property. He may become her agent in the management and disposal of it, but the validity of his acts and the extent of his powers will be measured, as in the case of other agents, by the scope of the authority his principal has conferred.

22b 599
51 117
22b 599
55 737
22b 599
56 640
22b 599
65L 297

5. A husband was the agent of his wife in the making and delivery of a mortgage on her estate, which was made to A specifically as security for the debt of B. The debt being extinguished by the release of the principal debtor: *Held*, that the husband, under the authority to deliver the mortgage for the purpose for which it was made, had no authority to re-pledge the mortgage to A as security for the collection of assets which had been transferred by the debtor to A in satisfaction of the debt.

6. The assignee of a mortgage holds it subject to the same equities and defences that existed against it in the hands of the mortgagee.

The opinion of the Chancellor is reported *ante p.* 17.

*Mr. E. M. Shreve* and *Mr. B. F. Watson* (of New York), for appellants.

*Mr. F. B. Ogden* and *Mr. I. W. Scudder*, for respondent.

The opinion of the court was delivered by
DEPUE, J.

The bill in this case was filed to foreclose a mortgage bearing date on the 11th of January, 1868, and made by the defendants, William Atwater and Margaret A., his wife, to one Gaston Lemercier, in the sum of $8000. The legal title to the mortgaged premises was, at the time of giving the mortgage, and still is, in the wife.

William Atwater, the husband, was engaged in business in the city of New York, prior to November, 1866. Having become embarrassed in his circumstances, on the 13th of November, 1866, he made an assignment of his stock and business to Lemercier for the benefit of his creditors. About the 1st of February, 1867, Lemercier sold and transferred the stock and business to James B. Atwater, who is the brother of William. The business was subsequently carried on by James, under the management of William, who was employed as salesman on a salary. There is evidence from which it may be inferred that the business, though in the name of James, was really carried on for the benefit of William, under an agreement that it was to be transferred

to him when his circumstances would permit him to resume business in his own name.

After the sale and transfer to James, he became indebted to Lemercier, for money which he borrowed of him at different times, in the sum of about $10,000. The moneys so borrowed were used in the business; and in July, 1867, the defendants made and executed a mortgage on the same premises to Mrs. Lemercier, in the sum of $8000 to secure the repayment of the money loaned to James. This mortgage being unsatisfactory to Lemercier, because of the omission of the usual interest clause, the mortgage now in controversy was substituted for it. The business was conducted in the name of James until March, 1868, when financial embarrassments in the concern again arose, and negotiations were concluded between William and Lemercier for the sale of the stock of merchandise to Lemercier. This arrangement did not include the other assets of the business, and the object of the sale was to pay Lemercier the indebtedness of James to him. This bargain was made without the knowledge of James, and without any authority on the part of William. It was communicated to James on the next day, and he refused to ratify it unless the whole business was taken off his hands, and Lemercier would assume all the debts and liabilities on account of it. A new agreement was thereupon made between James and Lemercier, which is in writing, and under seal, and bears date on the 5th of March, 1868. By this agreement James assigned and transferred to Lemercier all the assets of the business, including the merchandise, notes, and open accounts, and Lemercier agreed to assume and be responsible for all the business debts owed by James, whether upon notes or accounts, as shown by the books.

Lemercier, on the 16th of March, 1868, assigned the mortgage to the complainant to secure a note, made for his accommodation by James, for $4000, which was made on that day but ante-dated the 17th of February, 1868, and was transferred to the complainant.

The moneys which were lent by Lemercier to James were borrowed by him in his own name, and he became the principal debtor. These moneys were embraced within the agreement of March 5th, 1868. They appear on the books of James, which are referred to in that instrument as descriptive of the debts to be assumed, as debts contracted in connection with the business in the form of credits to Lemercier, from time to time, as the several sums were advanced. The legal effect and operation of the agreement of Lemercier to assume and pay this debt which was due to himself, was to release and extinguish it. That such was the intent of the parties is too firmly established by the testimony to admit of any doubt. Lemercier testifies that James does not owe him anything now; that he was indebted to him at the time of the sale, but after the sale his personal indebtedness ceased to exist.

The effect of the satisfaction and extinguishment of the indebtedness for which the mortgage was collateral, was to discharge and extinguish the mortgage. In the absence of an agreement by the surety that his liability or that of the securities he pledges shall continue, notwithstanding the discharge of the principal debtor, which in effect makes the surety the principal debtor, an absolute release by the creditor of the principal debtor from all ultimate liability for the debt, will enure to the benefit of the surety and operate, *ex proprio vigore,* as a discharge of his liability. *Lewis* v. *Jones,* 4 *B. & C.* 506; *Webb* v. *Hewitt,* 3 *K. & J.* 438; *Green* v. *Wynn, Law Rep.* 4 *Ch. App.* 204, 206.

The complainant contends that, notwithstanding this release, Lemercier was entitled to retain the mortgage by force of an agreement made pending the negotiations which resulted in the sale. It is proved in the case that after the inventory and valuation of the merchandise were made, the assets were found to be insufficient to pay the liabilities, and that the ability to collect them all was doubtful; that Lemercier refused to conclude the bargain, but being advised by Johnson, who was a clerk in the establishment,

that under the circumstances it would be best to accept the transfer, if William would let the mortgage remain as security for the collection of the assets, he finally gave his consent. Johnson testifies that thereupon an agreement was made between William and Lemercier that the sale and transfer should be concluded on the terms demanded by James, and that the mortgage should be retained by Lemercier as security for the collection of the book accounts and notes, which were part of the assets transferred, and liable for any deficiency in the collection thereof; and that after the arrangement was made, the terms proposed by James with respect to his release from all the debts, were accepted, and the agreement of March 5th, 1868, was prepared.

The agreement for the retention of the mortgage in the hands of Lemercier was made by William, without the knowledge of James. It is not contended by the complainant that James assumed any obligation whatever for the collection of the assets. His discharge from all responsibility whatever connected with the business, without any qualification or condition, is conceded. The effect of the transaction was to satisfy the debt of James, whereby the mortgage was discharged, and to place it in the hands of Lemercier upon an entirely different contract. The contract under which Mrs. Atwater consented to pledge the mortgage originally, was one which gave her a remedy over against James, personally, for indemnity. Under the new contract for re-pledging it, she had, as a means of indemnification, only the remedy by subrogation to his right in assets which should be found by Lemercier to be unavailable.

A mortgage which has been satisfied may be given a new vitality by a re-delivery by the mortgagor to the mortgagee or a third person, upon a new consideration, or for a purpose different from that for which it was made. *Robinson* v. *Urquhart*, 1 *Beas.* 515; *Hoy* v. *Bramhall*, 4 *C. E. Green* 563. But to give such effect to the mortgage the re-pledging must be made by the authority of the person whose estate is sought to be held for the performance of the

new obligation.    Mrs. Atwater was the owner of the mort-
gaged premises, and the mortgage, when once extinct, could
only be revived by an authority which emanated from her.

The proof is that the mortgage was made specifically for
the accommodation of James, as a security for the loans
made to him.    A mortgage given for a specific purpose
must be applied exclusively to that purpose, and any other
disposition of it will be a fraudulent mis-appropriation,
against which the mortgagor will be entitled to relief.
*Andrews* v. *Torrey*, 1 *McCarter* 355.

Lemercier is chargeable with notice that the title was in
her.    He knew the purpose for which the mortgage was
originally given.    There is no testimony from which to
impute to Mrs. Atwater fraud, actual or constructive, in
relation to the transaction.    The case must stand upon the
naked ground of the authority of William to act as agent
for his wife to bind her by the agreement under which the
mortgage, once extinct, was given a new vitality in the
hands of Lemercier.

The power of the husband to bind the separate estate of
his wife, will not result from the marital relation.    The
disability of the husband to bind her property is not left to
inference from the creation of a separate estate.    The statute
expressly declares that it shall not be subject to his dis-
posal.    He may become the agent of his wife in the manage-
ment and disposal of her property, (*Knapp* v. *Smith*, 27 *N.
Y.* 277; *Owen* v. *Cawley*, 36 *Ibid.* 600); but when he does
so, the validity of his acts will be determined, and the extent
of his powers measured, as in the case of other agents, by
the scope of the authority which his principal has conferred.
*Lawrence* v. *Finch*, 2 *C. E. Green* 234.

William was the agent of his wife in the making and
original negotiation of the mortgage.    The Chancellor con-
cludes that his agency in this transaction was general, and
not limited to any particular terms, and on this ground the
decision below was made.    My examination of the case has
led me to a different conblusion.    The authority of an agent

to use his principal's name as security for a third person, will not result from an agency, however general, in the transaction of the principal's business, unless it be shown that the agent was authorized to use the principal's name for such purposes, either expressly, or by implication from proof that he was accustomed, with his principal's consent, to use his credit for the accommodation of others. *Gulick* v. *Grover,* 4 *Vroom* 463. It is manifest that the negotiations which preceded the making of the mortgage, were for a security for the indebtedness of James to Lemercier. Mrs. Atwater testifies that the mortgage was made specifically for that purpose. In this she is confirmed by her husband, and not contradicted by the testimony of any witness. Indeed, the complainant's counsel, in the brief submitted in this court, admit that the mortgage was executed as security for this indebtedness. When the proposition to resell to Lemercier was communicated to her she was informed that one of the terms of sale was that the mortgage was to be satisfied, and the husband had authority from her to see to its payment and cancellation. This is the extent of the agency of the husband. She testifies she never consented to the re-pledging or use of the mortgage in any way different from its original purpose. In December, 1868, a paper was prepared for her signature by Lindley Underhill, with the knowledge of Lemercier, giving consent to the use of the mortgage as security for the collection of these claims, which she refused to sign. She further testifies that she never gave her husband any general authority to act for her in disposing of or pledging her estate. There is no evidence, direct or circumstantial, to impeach the truth of her testimony.

The agency of the husband in these transactions was special, and did not include the power to re-pledge the mortgage for a purpose foreign to that for which it was made. When he had delivered it to Lemercier for the special purpose for which it was made, his authority was at an end. He could not, after the object of its execution and delivery was fulfilled by the satisfaction of the debt which it was

executed to secure, re-pledge it for a different purpose without new authority from his wife. His subsequent use of it was a fraudulent misappropriation of the security, against which his wife is entitled to relief. *Andrews* v. *Torrey*, 1 *McCarter* 355.

The mortgage while in the hands of Lemercier was satisfied and discharged. By the re-pledging without her authority, it did not acquire a new vitality against Mrs. Atwater. It is equally invalid in the hands of the complainant. As assignee he acquired no rights superior to those of Lemercier, his assignor, and holds it subject to the same equities and defences that existed against it in the hands of the mortgagee. *Shannon* v. *Marselis*, *Saxt.* 413; *Jacques* v. *Esler*, 3 *Green's Ch.* 461; *Woodruff* v. *Depue*, 1 *McCarter* 168; *Andrews* v. *Torrey*, *Ibid.* 355; *Conover* v. *Van Mater*, 3 *C. E. Green* 482.

The decree appealed from should be reversed, and the complainant's bill dismissed, with costs in this court and in the Court of Chancery.

The whole court concurred.