DORA WALZ et al.

*v.*

ELIZABETH OSER et al.

[Decided January 4th, 1922.]

1. An assignee of a mortgage takes it subject to existing equities between the parties, and it is the duty of the assignee to inquire of the mortgagor as to his liability thereon.

2. It is clear that under *2 Comp. Stat. p. 1630 § 48* nothing but money shall be considered as payment of any part of the capital stock of a corporation organized under the Corporation act of New Jersey, except property necessary for its business for which under section 49 (now repealed) capital stock might be issued.

3. Where an undertaker and his stock salesman, a preacher, formerly the woman's pastor, together with a lawyer, took undue advantage of a woman seventy-three years old, and procured from her a mortgage of $10,000 on her farm in exchange for stock of doubtful value in the undertaker's company, she being at the time in the early stages of senile dementia, equity will not aid in foreclosing the mortgage in behalf of the parties who gained this unfair advantage.

---

On pleadings and proofs.

*Mr. Merritt Lane,* for the complainants.

*Mr. Randolph Perkins,* for the defendants.

LEWIS, V. C.

This is a bill to foreclose a mortgage given by Elizabeth Oser to William Necker, Inc., a corporation of the State of New Jersey, dated August 1st, 1914, given to secure a bond of even date therewith, conditioned for the payment of $10,000 on August 1st, 1919, or sooner, at the option of the obligor, with interest thereon at five per cent. per annum. The mortgage covered a farm near Bergenfield, Bergen county, New Jersey. At the time of the execution and delivery of the bond and mortgage, the mortgagor, a widow, was over seventy-three years of age. She was German born and could not read or write the English language. The ostensible consideration for the mortgage was capital stock of the par value of $10,000 of the mortgagee, William Necker, Inc., a corporation engaged in the business of "undertaker," at Union Hill, Hudson county. and vicinity. William Necker was the dominating factor in the corporation, and appears to have been aggressive both in financing it and in conducting its ordinary activities. As a part of the business organization, the Necker corporation had in its employ the Reverend Mr. Groenert, who had previously been the pastor of the church which Mrs. Oser attended, and who was on the most close and confidential relations with her. He called her "Mother," and she regarded him as a son, and he testified that she had "every confidence" in him.

As an employe of the Necker corporation Groenert was engaged in selling its capital stock, and also in the preaching of funeral sermons in connection with the company's business of conducting funerals. He was designated as the "Chaplain."

At the time of the execution of the bond and mortgage Groenert was no longer the pastor of the church which Mrs. Oser attended, but his influence over her still remained.

The bond and mortgage were witnessed by Edward Hollander, an attorney-at-law of this state, who also took the acknowledgment of Mrs. Oser to the mortgage, as a master in chancery. Hollander was also the attorney for the Necker company at the time it was incorporated, and actually conducted its corporation. He continued to act as its attorney thereafter; was em-

ployed and paid by the company to act in its behalf in the securing of the bond and mortgage from Mrs. Oser, and continued to act in the capacity of attorney for the company for a long time after the bond and mortgage were obtained.

Prior to the time when the bond and mortgage were obtained from Mrs. Oser, she was importuned by both Necker and Groenert to mortgage the farm on which she and her adult children lived, and from which they gained their livelihood, for the stock in the Necker corporation, which was then in financial straits, heavily encumbered, and with some of its paper having gone to protest. Notwithstanding that condition, it was represented to Mrs. Oser that the company's property was free of encumbrance, and that it was not in debt. The Osers were very poor and had worked for years to acquire the farm on which they lived. Mrs. Oser had no independent advice, not even from her children, who were kept in ignorance of the persuasions brought to bear upon her.

Furthermore, I am satisfied from the evidence that at this time Mrs. Oser was at least in the early stages of senile dementia and utterly incapable of understanding the nature and effect of the transaction which she was thus persuaded to enter into. Within a comparatively short time thereafter she became entirely irresponsible and helpless. Hollander, the attorney for the company, remonstrated because of the persistent persuasion which had been brought to bear upon the old lady, although he did not interfere when the transaction was being consummated; he was evidently being paid by the company to take part in a transaction that he finally concluded he did not approve of. On that occasion Mrs. Oser did not seem to be able to comprehend what was going on, and they had to keep repeating to her what they wanted done. She seemed to forget it as soon as it was stated; and a short time later on it became necessary to revisit Mrs. Oser with the papers to rectify a clerical defect; and at that time she had no recollection whatever of either Hollander or the mortgage; and Hollander had to be reintroduced to her. All of this clearly shows the condition into which her mental faculties had lapsed.

*93 N. J. Eq.*              Walz *v.* Oser.

The mortgage was recorded on August 14th, 1914, and on September 25th, 1914, the Necker company assigned it to Lawrence Fagan for "one dollar and other valuable considerations." The testimony shows that Fagan held the mortgage for the Hoboken Printing and Publishing Company, to which the Necker company was heavily indebted. Contemporaneously therewith, however, the Necker company gave to the printing company its note to cover this amount, with several individual endorsers, who are still liable on their endorsements, irrespective of the assignment of the bond and mortgage.

On June 8th, 1915, Fagan assigned the bond and mortgage to Frederick A. Seide, as trustee, in consideration of "one dollar;" and on July 22d, 1918, Seide assigned them to Dora Walz, the present complainant, for "one dollar and other valuable consideration." These latter holders were successive trustees for the printing company, and the testimony fails to show that any valuable consideration actually passed on the respective transfers of the bond and mortgage. It also fails to show that the assignees took the precaution to obtain from the mortgagor the usual declaration of no set-off, or to satisfy themselves that there were no equities existing in her favor as against the mortgagee.

On December 31st, 1914, the Necker company paid to Mrs. Oser dividends on the stock amounting to $291.67; and on July 1st, 1915, and January 3d, 1916, like dividends were paid, amounting to $350 at each payment, making a total of $991.67. At the time the dividends were paid there was deducted from the amount thereof the interest due upon Mrs. Oser's mortgage, and she was paid the difference, although just why this should have been done is difficult to explain, for the Necker company had transferred the mortgage to Fagan several months before the first dividend check was given; and Fagan had transferred to Seide before the second and third dividend checks were paid.

In October, 1916, the United States district court for the district of New Jersey appointed a receiver for the Necker company, and the company was adjudicated insolvent by that court. The bill to foreclose in the present suit was filed in August, 1918. Mrs. Oser died in April, 1919, and the defendants now

substituted in the suit are her heirs-at-law, her daughter and sons, who claim, in fact, to have been co-owners of the mortgaged premises with Mrs. Oser, title thereto, however, having been taken in her name alone. William Necker is also now deceased.

It is the well-settled rule in this state that the assignee of a mortgage takes it subject to existing equities between the parties to it; and it is the duty of the assignee to inquire of the mortgagor as to his liability thereon. *3 Comp. Stat. p. 3418 § 31; Magie v. Reynolds, 51 N. J. Eq. 140; Cartun v. Meyers, 82 Atl. Rep. 14; Gierth v. Fidelity Trust Co. et al. (New Jersey Court of Errors and Appeals).*

It is also clear that under section 48 of the Corporation act (*2 Comp. Stat. p. 1630*) nothing but money shall be considered as payment of any part of the capital stock of any corporation organized under that act, except property necessary for its business, for which, under section 49 (which was in effect at the time the Oser mortgage was given, but since repealed), capital stock of the corporation might be issued. I do not see how it can be said that this mortgage was necessary for the business of the Necker corporation.

But aside from this, I think that at the time the bond and mortgage were obtained from Mrs. Oser she was afflicted with bodily and mental infirmities, and so disabled that she was wholly incapable of doing business or of making any contract, bargain or disposition of her property with discretion or understanding; and that undue advantage was taken of her by the combined force of the undertaker, the preacher and the lawyer, who surrounded her to the complete annihilation of her own will.

It is a fundamental principle of a court of equity that in bargaining with an illiterate and ignorant person, without full knowledge of the situation involved, and having no independent advice thereon, strict good faith should be observed by the party so bargaining not to deceive such party by any act or representation; or to allow him to deceive himself by any mistake as to the facts; and that this tribunal will never lend its active aid in behalf of a party who, by a superior knowledge and

artful silence, has gained an unfair advantage over another. *Hyer* v. *Little, 20 N. J. Eq. 443; Erie Railroad Co.* v. *Delaware, Lackawanna and Western Railroad Co., 21 N. J. Eq. 283.*

As was said by Chief-Justice Beasley, sitting for the chancellor, in the case last cited (at *p. 298* of the report) : "Such triumphs are deemed unconscionable and are opposed to the general principles of the law."

If Mrs. Oser at the time of the execution of the bond and mortgage was in the condition of irresponsibility which I have attributed to her, then, *a fortiori*, was she less able as time went on to assert her equities against the mortgagee and its assignees.

In the light of the testimony as to her mental condition, the whole transaction had doubtless passed entirely out of her mind shortly after it was consummated and not revived until the suit to foreclose the mortgage was commenced; and her children did not come in as parties in interest until after her death, when they were substituted as the defendants in the foreclosure suit.

Groenert cashed the dividend checks for her, and she doubtless never knew just what they meant.

I am satisfied, therefore, that by the clear misrepresentations made as to the financial condition of the Necker corporation; from the disability under which Mrs. Oser suffered, and the *ultra vires* nature of the transaction, that the defences set up in this action should prevail, and that laches are not imputable to the defendants, under the circumstances. The bill, therefore, will be dismissed.

I will advise a decree in accordance with these views.