Complainant, admittedly as representative of and trustee for the National Union Bank of Dover, New Jersey, holds a tax certificate on the property known as 402 Blackwell street, Dover, New Jersey, the lien of which he — as against defendants O'Connells, owners of the fee, and the said bank, holder of a mortgage upon said premises — seeks to foreclose. Without challenging complainant's right to the relief sought, each of these defendants has filed a cross-bill wherein the O'Connells *Page 455 
assert a right to a cancellation while the bank claims a right to the foreclosure of the mortgage in question. This is the issue here presented for determination.
The evidence discloses that on December 27th, 1907, Isabelle O'Connell, to secure the payment of $2,500, executed and delivered the mortgage in question to James Simpson, who, on February 26th, 1914, assigned it to Nannie Bartel: Thereafter, on November 10th, 1917, Isabelle O'Connell, having died intestate, the mortgaged premises descended to her four surviving children, ranging from two to fifteen years of age, subject to the estate of curtesy of her husband, John O'Connell.
On or about December 18th, 1923, these infant owners shared in the distribution of the estate of James D. Purcell, deceased, to the extent of more than $3,000. This money was paid over to their guardians, Mary O'Connell and Jennie O'Connell, the latter of whom, for some unexplained reason, deposited it in her own individual bank account from which she, thereafter, on April 19th, 1924, withdrew $2,597.58, which she paid over to Nannie Bartel, taking an assignment instead of a cancellation of the mortgage in question. Whether this assignment was made out to the infants or to their guardians did not definitely appear; the assignment, which was never recorded, having been lost.
Upon learning of this assignment, John O'Connell, father of the infant owners, insisted that a cancellation rather than an assignment of the mortgage should have been taken. Subsequently, he secured the assignment, as well as the bond and mortgage, for safekeeping. Thereafter, in compliance with the bank's demand upon him in 1928 for collateral to secure his direct and contingent liability to it, he delivered the bond and mortgage to it, under circumstances sharply disputed but not necessary to be here determined. The bank subsequently procured an assignment of said bond and mortgage from Nannie Bartel directly to it, which O'Connell claims, but the bank denies, was without his knowledge or consent.
It is insisted on behalf of the bank that it is a bona fide
purchaser for value of the mortgage, and hence, in view of *Page 456 
John O'Connell's default in his obligation to it, is entitled to a decree of foreclosure. This contention, however, necessarily presupposes that John O'Connell, at the time of its hypothecation, was the owner of or had the right to pledge the mortgage with the bank as security for his own personal obligations, neither of which facts, as shown by the evidence, here existed. Nor can the establishment of either of these facts be dispensed with because of the mere fact, as claimed by the bank, that O'Connell had then falsely represented himself to it as being the owner, by purchase, of said bond and mortgage. In the absence of proof of acquiescence by or an estoppel against the infant owners or their guardian, and no such proof has been here adduced, this court is without power to deprive them of their right to an assignment or cancellation of the mortgage, which unquestionably had been satisfied or purchased with their funds and for their benefits.
The bank strongly urges in support of its asserted right to a decree of foreclosure the fact that it upon the strength of the pledge of the bond and mortgage permitted John O'Connell to increase his direct liability to it by over $2,000, and to which extent at least it claims to have changed its position. It, however, has neither shown nor claims that the infant owners or their guardians did anything or were in anywise instrumental in bringing about that result, or even had any knowledge or notice of its being effected. Moreover, it is entirely undisputed that it was not until 1930, when the bank instituted its former foreclosure proceedings, that these infants or their guardians had any notice or knowledge of the bank's claim; from and after which time the bank does not even claim to have given John O'Connell any additional loans or credits.
It was incumbent upon the bank before accepting the pledge or assignment of the bond and mortgage to have made inquiry from the owners of the equity of redemption, the infants or their guardians, regarding the vitality or status of these instruments. This was the duty which the exercise of but ordinary common business precaution exacted from and the law enjoined upon it. InShannon v. Marselis, 1 N.J. Eq. 413, Chancellor Vroom held that it was the duty of the *Page 457 
assignee, before taking an assignment of a bond and mortgage, to make inquiry of the obligor, mortgagor or person owning the equity of redemption concerning the amount due thereon. The rule of law there enunciated subsequently received the approval of the court of errors and appeals in Fisher v. Bull, 52 N.J. Eq. 298,
where Mr. Justice Garrison said, "they [the assignees] were buying a debt, and it was clearly their duty to find out from the debtor whether he had any set-off. Having neglected to do this they must be postponed to the just claim he now presents." Both of these cases have since been cited and followed with approval by numerous cases amongst which are: Cartun v. Myers, 78 N.J. Eq. 303; Walz v. Oser, 93 N.J. Eq. 280; William F. Glasser Co. v. Muencks, 99 N.J. Eq. 42; Trust Company of New Jersey v.McGuinness, 104 N.J. Eq. 1; Henion v. Monahan, 110 N.J. Eq. 361.
Had then the bank discharged the duty thus cast upon it, it undoubtedly would have discovered or been apprised of facts tending to show that John O'Connell was neither the owner of nor vested with authority to pledge the bond and mortgage in question, and that, because of prior payments, the owners of the equity of redemption were entitled to a cancellation or assignment of both of these instruments. If upon inquiry the owners of the equity of redemption or their representatives had withheld from it the facts here asserted, the bank might at least have now occupied a better position in its attempt to invoke an estoppel against them.
Instead, it saw fit to accept and rely upon the mere representation of the man who it now says deceived it. For the deception thus perpetrated, the infant owners are not to be and cannot be blamed or charged. For the predicament in which it now finds itself, it has no one other than itself to blame. The inability of John O'Connell, then or thereafter, to produce an assignment from his alleged assignor, Nannie Bartel, to himself, or even in blank, coupled with his lack of other evidence indicative of his ownership of said bond and mortgage, should of itself have been sufficient to arouse, if not confirm, its suspicion and credulity relative to his claim of ownership of said instruments. It never made, not even *Page 458 
after the discontinuance of the foreclosure proceedings in 1930, inquiry from any source regarding the status or vitality of either of these instruments; although it knew, from its search of the records prior to the institution of those foreclosure procedings, that the infants were the owners of the property and not John O'Connell, as it claims had been represented to it by him. Its demand for and receipt of the affidavit of John O'Connell relative to his mode of acquiring and his ownership of the bond and mortgage in question, at the time of discontinuing its former foreclosure proceedings, manifested its doubt about the verity of his former representations concerning same; notwithstanding which it, however, made no inquiry from the infant owners or their representatives. It is not disputed that it never demanded or received any interest on either of these instruments from the owners of the property; nor did it in any manner, after abandoning its former foreclosure proceedings, indicate to them its intention of asserting the mortgage against them or their property, other than by its present cross-bill.
Conduct, such as here manifested on its part, is most careless, entirely inexcusable and certainly cannot afford any legal ground or justification for this court to deprive and divest the owners of the equity of redemption of their right to a cancellation or an assignment of the instruments in question. To so decree would be to penalize the infant owners for the dereliction and neglect of the bank, upon whom the loss, if any, rightfully should, and must fall.
As assignee, it took the bond and mortgage subject to the same equities that existed against its assignor, and this upon the ground, as aptly stated by Chancellor Dickerson in Jaques v.Esler, 4 N.J. Eq. 461, "that the assignee may, before taking the assignment, go to the obligor and learn whether there is any set-off or objection to the bond." These instruments were entrusted to John O'Connell for safekeeping and no other purpose. While in his hands they were either satisfied or else the property of the infants or their guardians. They are equally invalid in the hands of the bank, which, as assignee, acquired no rights superior to those of John O'Connell or Nannie Bartel, its assignor, and holds them subject to *Page 459 
the same equities and defenses that existed against them while in the hands of either of these persons. Shannon v. Marselis,supra; Jaques v. Esler, supra; Conover v. Van Mater, 18 N.J. Eq. 481; Atwater v. Underhill, 22 N.J. Eq. 599. Nor could the fact that John O'Connell had, without authority, pledged them with the bank as collateral for his obligations to it serve to give them a new vitality or effect as against the infant owners; nor to divest the latter of their right to the cancellation or assignment of those instruments.
Even if the bank were, as it contends, a bona fide purchaser of the bond and mortgage for value and without notice, it would, nevertheless, under the circumstances here shown, have taken subject to all the equities subsisting against them in the hands of its assignor; and consequently the infant owners cannot be precluded from showing the payment or discharge of these instruments or their misapplication by their custodian, John O'Connell. Andrews v. Torrey, 14 N.J. Eq. 355; Cornish v.Bryan, 10 N.J. Eq. 146; Woodruff v. Depue, 14 N.J. Eq. 168.
It is also insisted on behalf of the bank that, because of their failure to take legal steps or proceedings for the purpose of having the satisfied mortgage canceled of record, the owners of the property should now be estopped from asserting their right to its cancellation. Such, however, is not the law. It was not incumbent upon them to initiate any action or proceedings for the cancellation of the mortgage in question. They had a right to rely upon the well settled rule of law that the purchaser or pledgee of said bond and mortgage takes them subject to all equities subsisting against them and against which he has the power of protecting himself by making due inquiry at the proper sources. Magie v. Reynolds, 51 N.J. Eq. 113; Feinberg v.Rowan, 111 N.J. Eq. 138.
Complainant is entitled to a decree on his bill of complaint as against all of the defendants. The defendants the O'Connels, are entitled to a decree that the bank's cross-bill, as to them, be dismissed and that the bank deliver up to them for cancellation the bond and mortgage in question, in accordance with the prayer of their cross-bill. There will be a decree accordingly. *Page 460