## WILSON *vs.* KING and FORD.

1. A parol agreement by the grantee, at the time of taking a deed, that he would assume a mortgage upon the property as part of the consideration, will be enforced in equity. A covenant in the deed that the premises are free from encumbrances, or any other covenant, will not estop the assignee of such mortgage from recovering on such undertaking.

2. The proof in this case is sufficient to warrant a decree for deficiency in proceeds of sale against the grantee. But the allegation of the bill being that the undertaking was a stipulation contained in the deed, and that the grantee became bound by the acceptance of the deed, while the proof is that it was not contained in the deed, but was a parol promise at the making of the deed, the variance is fatal to such a decree.

3. An agreement between solicitors to amend the bill so as to conform to the facts, there being no amendment actually made, cannot avail on the hearing for final decree. Neither an agreement to amend, nor an order giving leave to amend, amounts to an amendment, even if filed.

4. To entitle a complainant to a decree in a foreclosure suit for any deficiency of the proceeds of sale in discharging the mortgage, the party sought to be charged must have been served with notice that such decree would be asked for against him.

5. The usual covenants in a deed are not part of the conveyance of real estate. They are mere personal covenants. A covenant against encumbrances, therefore, by a married woman, resident in the state of New York, in a conveyance of her husband's property, situated in this state, the law of New York not authorizing a married woman to enter into covenants as to her husband's property, does not affect, nor does any estoppel arising therefrom affect, a mortgage upon the property given by the husband prior to the conveyance, and which, after the conveyance, was assigned to the wife, and by her assigned to another. Her assignee would be entitled to a decree but for the defect in the pleading.

Argued upon final hearing, on bill, answer, replication, and proofs.

*Mr. A. K. Brown,* for complainant.

*Mr. Stone,* for defendants.

Wilson *v.* King.

THE CHANCELLOR.

The defendant, Ford, on the 15th of December, 1858, executed a mortgage to Harriet Woodward for $500. This is the mortgage sought to be foreclosed in this suit. It grants and conveys the property to the mortgagee, without any words of inheritance. The bill, in stating the mortgage, states that it conveyed the premises to Mrs. Woodward, "her heirs and assigns for ever, in fee simple." Ford and his wife Laura, by deed dated April 4th, 1858, acknowledged and recorded April 4th, 1859, (on which day it probably should have been dated, as stated in the bill,) conveyed the premises in fee to the defendant, King. This deed contained the usual covenants. The covenants of seisin, for quiet enjoyment, against encumbrances, and for further assurance, are expressed to be by the "parties" of the first part; this includes Mrs. Ford; the covenant for warranty is by Mr. Ford only. Ford and his wife resided in New York, and the deed was executed and acknowledged in New York before a commissioner for this state, residing there. On the 2d of August, 1865, Mrs. Woodward assigned the mortgage to Mrs. Ford, who on the 2d of December, 1867, assigned it to the complainant.

The bill states that in the deed to King it was stipulated that the lands were conveyed subject to the mortgage, and that the same was assumed to be paid by King as part of the consideration, and prays for a decree against King and Ford for any deficiency of the proceeds of sale in discharging the mortgage. But no notice that such decree would be asked for was served on either, as required by rule thirty-eight.

I find among the papers handed to me one signed by the solicitors of the parties, but not dated or filed, by which they agreed that the bill should be amended by striking out the allegation that this stipulation was contained in the deed, and by adding an allegation that it was by parol agreement at the time of giving the deed, and that King retained the amount of the mortgage out of the consideration money. But this amendment has not been made in the bill.

The only answer is that of the defendant, King. Ford was never brought into court. King denies all knowledge of

the mortgage or the assignment of it; avers that if any mortgage was given, it was without consideration, and fraudulent. He admits the deed to him, but denies that it contained a stipulation that he should assume the payment of the mortgage, and alleges that it contained full covenants of warranty, and purported to convey the premises free from all claims or encumbrances whatever. But it does not state that Mrs. Ford joined in the covenants, nor set them up by way of estoppel against the mortgage.

The complainant's relief, in this case, must be upon the mortgage, or the undertaking of the defendant, King, to assume and pay it. This cannot be had upon the mortgage, because the mortgage produced in evidence is entirely different from that set forth in the bill. The bill states a mortgage to Mrs. Woodward, her heirs and assigns, in fee. That produced is to her, without any words of inheritance; this is for her life only. The variance is substantial and radical. A decree *pro confesso*, or any decree in general terms, for the sale of these mortgaged premises, would be a decree to sell the fee, and would deprive the defendant of the whole fee. No application was made at the hearing to amend the bill; in fact, from the evident negligence with which the bill was drawn, and the proceedings in the cause conducted, it is doubtful whether the solicitor of the complainant ever noticed the defect, or even read the mortgage. It was not alluded to in the argument on either side. It will be in time to determine whether the bill can yet be amended in this respect, when application shall be made for that purpose. It does not appear in the case whether the mortgagee is living; if dead, such application would, of course, be of no avail. The doctrine of variance prevails in equity, as at law, though enforced with less strictness.

The undertaking of King to pay the mortgage would be enforced in equity, if proved. The covenant in the deed that the premises were free from encumbrances, or any other covenant, would not estop the complainant from recovering on such undertaking. It was so held by the Court of Errors in Bolles v. Beach, 2 Zab. 680. That was a suit by grantor

against grantee, on a verbal promise at the conveyance to assume and pay a mortgage of $1000, on the premises conveyed. The deed was with full covenants, including that against encumbrances, and it was declared that neither the covenants nor the recital that the consideration was paid in full, or the release for it, estopped the grantor from proving and recovering on the verbal agreement. The court held that the estoppel only applied when the proof was offered for affecting the validity of the deed. And it is settled that in equity the mortgagee may recover against the grantee on such undertaking to the grantor, as an equitable undertaking to him, although in a foreclosure suit no recovery could be had against the mortgagor on his bond for the deficiency until the act of 1866. *Nix. Dig.* 119, § 104.

The proof in this case is sufficient to warrant such decree. Mr. Wetmore, a counselor-at-law in New York, testifies that he was consulted in the negotiations about this conveyance to King, and that King agreed to take the title subject to this mortgage and to assume its payment. Mr. Ford also testifies to this. Mrs. Ford testifies that King, at the conveyance, was told of this mortgage, and knew it was upon the property. There is no testimony to contradict this. The answer of King does not contradict it. That states simply that there was no such stipulation in the deed to him. The settled principles of law and equity and the evidence in this cause, will warrant a decree against King to pay any deficiency in the proceeds of the sale to satisfy the amount due on this mortgage. But for this again the pleadings are insufficient. The bill states the undertaking as a stipulation contained in the deed, and that King became bound by the acceptance of the deed. The proof is, that it was not contained in the deed, but was a parol promise at the making of the deed. Neither at law nor in equity, would a declaration or bill upon a bond or promissory note be sustained by proof of a parol promise to pay the amount. The draftsman of the bill could not have read the deed. The agreement for amendment can be of no avail here. There is no amendment actually made. If a decree was signed, the

unamended bill would be enrolled and the decree would be set aside upon appeal. Neither an agreement to amend, nor an order giving leave to amend, amounts to an amendment, not even if filed in the cause. Such practice could not be tolerated. It would lead to great and inextricable confusion in enrolling the proceedings. The enrolling clerk would have to collect the orders and agreements, if they were not mislaid and could be found, and by cancellations and inser-- tions, adjust them in the bill, in which he would be liable to serious errors. The bill, when amended, should either be re-engrossed, or the amendments actually made by canceling and interlining, or by the substitution of sheets in the place of the canceled parts containing the amendments to be inserted. And in this case the amendment never having been made or filed, King has no opportunity to answer the allegation of a parol agreement. His responsive answer might have changed my conclusions as to the evidence.

But if the necessary amendment had been actually and properly made, there is another obstacle to a personal decree against King for the payment of the deficiency of the proceeds of sale of the Woodward life estate to satisfy the amount due. Rule thirty-eight declares that in a foreclosure suit no decree shall be made against any defendant for a deficiency, unless a notice that such relief is sought be served on him with the subpoena. In this case no such notice was served.

The matter mainly argued on the hearing of this cause was the question of estoppel. It is contended that the covenant of Mrs. Ford against encumbrances, when this mortgage was assigned to her, operated by estoppel to extinguish the mortgage, or, at least if it did not operate as a conveyance, it estopped her personally from setting up the mortgage, and that the complainant, her assignee, took it subject to all equities and defences that existed against it in her hands.

An estoppel will, in some cases, operate as a conveyance. It does not merely have the effect, which is personal, of preventing the party from averring anything against his act or deed, but in some cases it is held that the covenant of war-

ranty will transfer to the grantee after acquired title of the grantor, which, as is said, feeds the estoppel, and by the warranty passes to the grantee as soon as acquired. *Gough* v. *Bell*, 1 *Zab.* 164. This is one of the positions in that noted case which has never been doubted or reversed. But I know of no case that gives this effect to any other covenant than that of warranty. That covenant has always been peculiar in its effects.

In other cases the covenants are personal only, and estop the covenantor, his heirs and assigns, from averring to the contrary. The covenant against encumbrances is a personal covenant; if untrue, it is broken as soon as made; it does not pass with the land, and the grantee or his personal representatives alone can recover on it.

And it is held in states where married women have power to convey by statute, but no power to enter into contracts or covenants, that the covenants or the warranty of a married woman, even in deeds properly acknowledged, do not operate as an estoppel, either to prevent them from averring to the contrary or to convey the estate. *Jackson* v. *Vanderheyden*, 17 *Johns.* 167; *Martin* v. *Dwelly*, 6 *Wend.* 9; *Carpenter* v. *Schermerhorn*, 2 *Barb. Ch.* 314; *Dominick* v. *Michael*, 4 *Sandf. R.* 424; *Wight* v. *Shaw*, 5 *Cush.* 66; *Den d. Hopper* v. *Demarest*, 1 *Zab.* 541.

If the covenants of a married woman could be held to operate as a conveyance, these cases were wrongly decided, as in those states married women had then power to convey lands, but not to enter into any contract or covenant. And this was extended by these decisions even to the covenant of warranty. In Den *v.* Demarest, the covenant of Mrs. Hopper included that of warranty, and the opinion of Chief Justice Green in this matter was concurred in by Justices Randolph and Whitehead, in the Supreme Court, and by Justice Carpenter and Judges Schenck and Porter, in the Court of Errors. And although Chancellor Halsted expresses some doubt of it, he does not place his opinion on that ground, and the judgment was reversed on the ground that Mrs. Hopper,

at the conveyance, had a vested estate. These cases settle the principle that laws which confer on married women the power to convey lands, do not confer on them the power to bind themselves by covenants in such conveyances as a part of the power to convey.

Now it is true that by the act of March 20th, 1857, (*Nix. Dig.* 548, § 7,) a married woman may bind herself by covenants as to land in a deed entered into with her husband. Yet it is also true that Mrs. Ford was a resident of New York at the execution of the deed, and that it was executed in New York. And the capacity of any one to enter into a personal contract, and all questions with regard to personal status and capacity, are governed by the law of the domicil, especially when that is the place of the contract. The only exception is as to transfer of real estate, either by conveyance or succession ; that is governed by the law of the location of the real estate.

If these covenants were part of the act of transferring real estate, they would be valid if authorized by the law of this state. But the decisions above referred to settle the question that they are not part of the conveyance of real estate, and were not, therefore, made valid by the acts authorizing married women to convey. If, then, these covenants are mere personal covenants, the capacity of Mrs. Ford to enter into them, must be determined by the law of the state of her domicil where the covenants were made. Now the law of New York did not then, nor does it now, so far as I am informed, authorize a married woman to enter into covenants as to her husband's property. She can there make contracts as to her own property. She might, perhaps, as to her right of dower, or even her inchoate right of dower in this land. It would only in such case bind or estop her as to that right of dower, which is not in question here. If it were in question, it would not be affected by this mortgage, as it is not signed by her.

This conclusion is one that will effect justice in this case. It would be inequitable that the title to a just mortgage,

against which there is no other defence, should be destroyed in the hands of a *bona fide* holder by the artificial and technical defence of an estoppel, where the covenant in the deed that is relied on to effect it was inserted by mistake, and in which, by another mistake as evident as that, a married woman who joined in the deed to release her right of dower, was made to join in the covenants.

But, although the mortgage is not affected by these covenants, or any estoppel arising from them, for the reasons above given the bill must be dismissed.