Newcomb *v.* Lubrasky.

LEVERETT NEWCOMB

*v.*

SAMUEL J. LUBRASKY et ux. et al.

[Filed May 25th, 1903.]

1. Where one who had acquired the equity of redemption to property covered by three separate mortgages paid the amount of the first mortgage on the filing of a bill to foreclose that mortgage, and obtained a decree. by consent of the mortgagee, that the bond and mortgage be assigned to him, he thereby became subrogated to the rights of the mortgagee, and the mortgage was not satisfied.

2. One who had acquired the equity of redemption to property covered by three separate mortgages redeemed the property on the filing of a bill to foreclose by the first mortgagee, and obtained a decree that the mortgage be assigned to him. Afterwards the second mortgagee brought foreclosure proceedings, making the first mortgagee and the assignee, as owner of the equity of redemption, defendants, and alleging that the first mortgage was paid, though uncancelled of record, and obtained a decree by default that the property be sold, and that the foreclosed mortgage and the subsequent one be paid, and the surplus brought into court.—*Held,* that, as this decree did not adjudge that the first mortgage was paid, it did not conclude the assignee of that mortgage from bringing a subsequent suit to foreclose it.

*Mr. Leverett Newcomb, pro se.*

*Mr. Isaac O. Acton,* for the defendants.

REED, V. C.

This bill is filed to foreclose a mortgage given July 31st, 1888, by Samuel J. Lubrasky to the Alliance Land Trust, to secure the sum of $180.

Lubrasky and wife, on April 25th, 1893, executed a second mortgage upon property already mortgaged, and other lands, to the Franklin Land and Building Association of Salem, to secure $1,600. He also made a third mortgage, which does not figure in this case. The equity of redemption in the premises covered

Newcomb v. Lubrasky.

by these mortgages was acquired by the complainant, Leverett Newcomb. The present contest is between the complainant and the second mortgagee, the Franklin Land and Building Association, which is made a party defendant to the present foreclosure suit.

It appears that the Alliance Land Trust, on January 29th, 1897, then owning the first mortgage now sought to be foreclosed by Mr. Newcomb, filed a bill for that purpose. Whereupon Mr. Newcomb, as owner of the equity of redemption, filed an answer asking to redeem, and paid into court the amount due upon the mortgage, with costs, which moneys were taken out by the complainant. Subsequently the complainant assented to a decree that the bond and mortgage should be assigned to Mr. Newcomb. The payment by Newcomb of the amount due upon the mortgage under these conditions was not a satisfaction of the mortgage, but a redemption. It put Mr. Newcomb in the position of an equitable assignee of that mortgage. Without the assignment he had the right to have the mortgage delivered to him uncanceled, and this, in equity, is a complete assignment. Such redemption put him in the place of the mortgagee and gave him all the mortgagee's rights against the mortgagor. He thereupon became entitled to hold it as an existing mortgage until the owner of the equity of redemption redeemed it or he himself foreclosed it. *Jones Mort.* § *1086; Hamil. v. Dobbs, 4 C. E. Gr. 227.*

The important question is whether Mr. Newcomb lost his right to foreclose that mortgage by reason of the effect to be given to a decree made in a subsequent foreclosure suit brought by the second mortgagee, the Franklin Land and Building Association of Salem.

This suit was begun October 5th, 1901. The bill set out the subsequent encumbrances upon the property, and also contained an allegation as follows:

"That on or about July 31st, 1888, Samuel Lubrasky and wife made a mortgage upon the said tract, to the Alliance Land Trust, a corporation of the State of New York, to secure the sum of $180, which said mortgage was duly recorded and so forth, and still remains open upon said record.

But your orator expressly charges that said mortgage, although uncanceled of record, has in point of fact been duly paid and satisfied, and is no longer a lien upon said mortgaged premises, or any part thereof."

The mortgage thus attacked is the same mortgage now sought to be foreclosed.

At the time the bill was filed in the suit by the second mortgagee, Mr. Newcomb was the owner of the first mortgage, and was also the owner of the equity of redemption. Both the Alliance Land Trust and Mr. Newcomb were made parties in that suit, the latter because he claimed some right or interest in the said premises, by reason of the conveyance to him of the equity of redemption. The service of the subpœna upon the Alliance Land Trust appears thus: "Service acknowledged this fifteenth day of November, 1901, the Alliance Land Trust, William W. Banthall, Solicitor." Whether this was an adequate service upon the Alliance Land Trust need not be decided. Actual service upon Mr. Newcomb is returned. No appearance or answer was filed by either of these parties. The usual decree *pro confesso* was taken, followed by a reference and report and final decree. The final decree directs the payment of $684, and costs, to the Franklin Land and Building Association out of the proceeds of the sale to be made of the mortgaged premises, and any surplus to be applied to the payment of the subsequent mortgage, and then, if any surplus remain, it was to be brought into court. The mortgage to the Alliance Land Trust is not mentioned in the decree.

The question is whether, by force of this decree, the complainant is now estopped from insisting that his mortgage is still unpaid. The estoppel is set up by the Franklin Land and Building Association in its answer in the present case. The answer, upon the trial, made to this insistence was that the first mortgagee was not bound to take notice of the suit to foreclose brought by the second mortgagee. The equitable owner of the first mortgage relied upon the doctrine that a second mortgagee cannot foreclose the equity of the first mortgagee. This familiar doctrine is applicable whenever a subsequent mortgagee recognizes the existence of a prior mortgage. Such subsequent mort-

gagee cannot compel the prior mortgagee to submit to a fore-
closure of his mortgage. Such prior mortgagee need take no
notice of the existence of such a suit, but he may come in and
assent to the sale of the premises free of his encumbrance, and
that his mortgage may be paid out of the proceeds. Any sale
made of the property without such consent is made subject to
the lien of his prior mortgage.

But this suit brought by the Franklin Land and Building
Association did not recognize the existence of the recorded prior
mortgage. On the contrary, it attacked its existence by charg-
ing that it had been paid. The bill therefore was not to foreclose
the first mortgage, but to have it decreed to have been paid and
to have it cancelled of record. In *Gihon* v. *Belleville White Lead
Co., 3 Halst. Ch. 536,* it was said: "A man holding a second
mortgage may file a bill stating that a prior mortgage has been
given, and setting up that it is fraudulent and void, or has been
paid, and ask to have it so decreed; or make a person so holding
it a party, and ask to have the premises sold to pay the mortgage."

This practice is recognized by Mr. Justice Van Syckel in
*Bigelow* v. *Cassedy, 11 C. E. Gr. 561.* He says: "Even if the
bill charges the prior mortgage to be void or paid, and it turns
out to be a valid subsisting encumbrance, the mortgaged premises
will not be sold to pay the prior mortgage without the consent
of the prior mortgagee." The charge in the bill, therefore, that
the first mortgage was paid was entirely proper, and if Mr. New-
comb had been brought into the suit because of his interest in
such mortgage, and there had been a decree that this mortgage
was paid, there can be no doubt that he would have been estopped
from now setting up the existence of his mortgage.

And, although he was brought into the suit as the owner of
the equity of redemption, yet he, having knowledge of his un-
recorded equitable assignment of the mortgage, would, I think,
have been bound to defend against the attack made upon the
mortgage. But conceding all this, I do not see how the decree,
as framed, can be regarded as concluding Mr. Newcomb, upon
the question whether this mortgage was paid. There was no
prayer in the bill for such a decree, and no decretal order was

made adjudging that the mortgage to the Alliance Land Trust was paid and should be cancelled of record.

The decree, so far as it directed the payment of the money to be realized from the sale of the mortgaged premises, is in no way significant respecting the existence or non-existence of the first mortgage. There would have been no payment to the first mortgagee under the bill as framed in any event. The distribution of the money raised would have been exactly the same whether the property was sold free or subject to the lien of a prior mortgage. Now, with the exception of the direction as to the distribution of the money raised upon this foreclosure sale, the decree contains nothing but the ordinary order that the defendants stand foreclosed from all equity of redemption in so much of the mortgaged premises as shall be sold. The first mortgagee had no right of redemption of which he could be foreclosed. He held a superior interest, which, as already remarked, could not be foreclosed in that suit. The decree, therefore, applied to those defendants only who held subsequent encumbrances or interests.

There should be a decree for the complainant.