In this cause, in 1927, there was decreed the foreclosure of a mortgage covering four lots of land in West New York. A writ offieri facias issued but was not executed. In 1930, the complainants took an order for a new execution and thereupon the Monitor Holding Company which had, since the decree, acquired title to one of the lots, petitioned the court to ascertain whether all the lands mentioned in the final decree remained liable thereto and in what amounts, and in what order the lands still affected should be sold to satisfy *Page 48 
the decree. The master to whom the matter was referred has reported, and to his report exceptions have been filed.
Complainants, soon after they obtained their decree, released lot No. 1 and that lot needs no further mention. On March 10th, 1928, lots 2, 3 and 4 were owned by the Park Avenue Holding Company, subject to the decree on which there was due the principal sum of $35,000 besides interest. On that day, the holding company conveyed lots 2 and 3 to one Bork, who deeded the lots to 1231 Boulevard East Corporation, and, while that corporation still owned both lots, complainants released lot 2 from the lien of the decree, retaining their lien on only lots 3 and 4. In 1930, Clarence Linn purchased first lot 3 and then the decree, and was substituted as complainant. He has since died and his executor has revived the cause.
The first question argued goes to the effect of the conveyance of lots 2 and 3 by the Park Avenue Holding Company to Bork, and the retention of lot 4 by the holding company. This court has frequently stated the rules which determine the marshalling of lands in discharge of a mortgage. Those principles do not depend on the circumstance that the lien which encumbers the several parcels is a mortgage, but apply equally when the lien is of a different kind, for instance, a judgment. Ingersoll v. SomersLand Co., 82 N.J. Eq. 476. So the fact is unimportant that the lien now under consideration is a decree in which complainants' mortgage has merged. Generally, the burden of a common charge on several lots should be borne by the several lots ratably, according to their value. This rule applies unless, at the time one lot was severed, in title, from the others, the parties to the transaction intended that the burden should not be borne ratably. Jackson v. Condict, 57 N.J. Eq. 522. The equities are governed by the intention of the parties, whether it be expressed in a formal agreement or be deduced from all the circumstances of the sale. Stuyvesant Security Co. v. Dreyer,103 N.J. Eq. 457; affirmed, 105 N.J. Eq. 585. Thus, if the owner of several lots, encumbered by a blanket lien, sells them *Page 49 
one after the other, conveying each by warranty deed, an intention to charge the whole burden on the land retained is shown, and the lands are marshalled in the "inverse order of alienation." Shannon v. Marselis, 1 N.J. Eq. 413, and many more recent decisions. Or, if the deed contains a covenant by the grantee to assume and satisfy the entire lien, then the lot sold is first chargeable. Chancellor v. Towell, 80 N.J. Eq. 223.
The master reported that the lots sold and lot 4 retained by the holding company remained primarily liable for their respective proportionate parts of the decree; that is, lot 2 was then worth $22,956, lot 3 $23,326, and lot 4 $28,613, so that lots 2 and 3 were primarily liable for $21,628.55 and lot 4 for $13,371.45. The Monitor Holding Company, now the owner of lot 4, excepts on the ground that the master should have reported that lots 2 and 3 became primarily liable for the entire debt. Linn's executor takes the opposite position and excepts because the master did not apply the inverse order of alienation and report that lot 4 became primarily liable for the whole.
The conclusion of the master was well based on his finding that the purchaser of lots 2 and 3 did not assume the entire decree, and also that the vendor did not agree to exonerate those lots from the charge. "A master's findings of a fact in issue is entitled to great weight and should not be disturbed when there is a serious conflict of evidence." Riverside Apartment Corp.
v. Capital Construction Co., 107 N.J. Eq. 405; affirmed,110 N.J. Eq. 67. Yet the court must review the findings of the master on the points involved in the exceptions and must affirm, reverse or modify the findings in the light of all the evidence.MacDonnell v. Vitille, 111 N.J. Eq. 502, 508. Before discussing the proofs, a point of law of evidence must be considered. In Smith v. Colonial Woodworking Co., 110 N.J. Eq. 418,
Mr. Justice Donges wrote: "The law is that in the case of a sale of property subject to encumbrances, unless there is an assumption of the mortgage, or it is covenanted that the mortgages are part of the consideration *Page 50 
money, the grantee is not obliged to assume the payment of such mortgage. Under the law there is no assumption of the mortgage unless such language appears in the deed, or it is said therein that the mortgages are part of the consideration money." This decision, it is argued, confines the inquiry to an inspection of the deed and forbids examination of other evidence which might prove that the grantee assumed the mortgage. I do not think the court of errors and appeals so intended. The question of the competency of extrinsic evidence to prove the assumption agreement was seemingly not presented for decision. There are no precedents for holding such evidence to be inadmissible, while the contrary is fully established both by reason and authority.41 C.J. 721; 19 R.C.L. 381; L.R.A. 1917, C. 592 note;50 A.L.R. 1220 note. Our law on the subject was stated by the court of errors and appeals in Bolles v. Beach, 22 N.J. Law 680. See, also, Wilson v. King, 23 N.J. Eq. 150. An agreement to assume a mortgage is collateral and independent of the transfer of title; it does not affect the operation of the deed and may be proved by extrinsic evidence.
The Park Avenue Holding Company was owned by two men, Walser and Fink. One Lauterbach, in some previous venture of Walser's, had lost a large sum of money. To square this loss, Walser agreed that the Park Avenue Holding Company would turn over to Lauterbach lots 2 and 3. Lauterbach formed a corporation, 1231 Boulevard East Corporation, to hold the property. Bork was a mere conduit for the legal title and never had or claimed any real interest. Bork or the Boulevard East Corporation or Lauterbach paid no consideration whatever for the property. Walser satisfied Fink, the other stockholder of the Park Avenue Holding Company, by turning over to him his stock interest in the company. Except the deeds by which title was transferred, there were no written contracts covering any of these transactions. The conveyance from the holding company to Bork was effected by a warranty deed, but made expressly "subject to mortgages and taxes." The deed from Bork to the corporation *Page 51 
was made expressly subject to "a first mortgage held by Dieckmann et al., on which there is due $35,000 principal plus interest."
There were three witnesses who might be supposed to have knowledge of the agreement between the parties — Walser, Lauterbach and Decker, a lawyer. The first two testified that 1231 Boulevard East Corporation or its promoters agreed to assume the entire mortgage debt. Decker said he knew of no such agreement; that he drew the deed without any assumption clause because he did not understand that the grantee would assume the indebtedness. But he further testified that he understood that 1231 Boulevard East Corporation was going to build a large building on the property and would acquire the money for this purpose by a new mortgage and in order to obtain a mortgage, would have to pay off complainants' decree. The testimony of these three witnesses was unimpressive and if I had to rely upon it alone, I would not disturb the finding of the master. But there was other evidence.
As soon as Lauterbach obtained title, he made plans to erect a large building on lot 2 and obtained a mortgage loan for that purpose from the New Jersey Title Guarantee and Trust Company. In order to secure the new mortgage, he had to obtain a release from complainants. For this he paid $10,000 on account of the decree and interest on the entire $35,000 debt and the taxes not only on lots 2 and 3, but on lot 4. There was a second mortgage covering the three lots and alleged to be included in the assumption agreement. Lauterbach's company, in 1929, paid it in full. He or his company never asked the Park Avenue Holding Company to contribute any part of these payments.
Mr. Decker, by authority of 1231 Boulevard East Corporation, wrote to the attorney for complainants in June and again in October, 1928, that the entire balance owing to them would be paid off by his corporation out of the proceeds of a mortgage to be placed on lot 2. I can see no explanation for these circumstances except that 1231 Boulevard East Corporation *Page 52 
had assumed payment of the liens on all three lots. The only evidence that points to the contrary is another letter from Decker to complainants' attorney relating to the release of lot 2 in which he said that after the release, the decree would be a lien on lots 3 and 4. Likewise, the release itself recited that these lots would remain as security for the debt. But this letter and the recital in the release are not repugnant to the claim that the grantee assumed the entire debt, for even after the assumption, though lots 2 and 3 would be primarily liable, lot 4 would remain secondarily liable for the debt. The master's report is not supported by the evidence in the particulars now under consideration. I find that 1231 Boulevard East Corporation assumed the burden of the decree.
Later, that corporation became insolvent and a receiver was appointed. The receiver, of course, stood in no better position than the corporation and his title was equally chargeable. He conveyed lot 3 to 1235 Boulevard East Corporation. If this corporation was a bona fide purchaser for value without notice, then it was not subject to the equity in favor of the owner of lot 4, which made lot 3 first chargeable for the decree. But that corporation paid no consideration for the lot; it does not stand in the position of a purchaser for value; its equity is no better than that of 1231 Boulevard East Corporation. Its stockholders were creditors of the insolvent company and, I take it, the receiver was permitted to turn over to them the property in lieu of liquidating it himself. Then Mr. Linn took title, but he did so after the petition of the Monitor Holding Company in this cause had been filed and served on him. He therefore had notice of its equity. His executor, as owner of the land, holds title subject to the equity of the Monitor Holding Company; lot 3 is primarily liable for the decree unless the circumstances now to be stated lead to a different result.
In 1928, Mr. Linn loaned to 1231 Boulevard East Corporation $51,250 on a mortgage covering lot 3. Petitioner contends that Linn made this loan with knowledge that the lot which he accepted as security was primarily liable for the *Page 53 
whole of complainants' decree. Generally, when a creditor has a lien on two properties and a second creditor has a subordinate lien on only one of them, the first creditor must exhaust the other security before resorting to that in which the second creditor has an interest. Here, complainants had a lien on both lots 3 and 4, while Linn's mortgage covered only lot 3. If the rule just stated applies, lot 4 must be first sold to make complainants' debt. But the rule does not apply if Linn took his mortgage with knowledge that the owner of lot 4 had an equity which required the complainants to make their debt out of lot 3 before resorting to lot 4. If Linn had such knowledge, his executor cannot object that the equity in favor of lot 4 be now enforced to his disadvantage. I do not find, however, that Linn knew, or had notice, of the equity. He was aware that lot 3 and lot 4 were no longer held by a common owner; but the recorded deeds did not disclose that lot 3 had been made chargeable with the entire debt. Where the owner of mortgaged property conveys part thereof, expressly subject to a mortgage, the presumption is that the several tracts remain proportionately liable for the debt. Jackson v. Condict, supra. Linn was not bound to inquire whether the grantee of lot 3 had assumed the entire debt. The only circumstance urged to show actual knowledge by Linn is that part of the mortgage-money advanced by him was used to pay off an earlier mortgage which he held and which covered lot 4 as well as lot 3. This circumstance was not enough to put him to inquiry whether the owner of lot 3 had assumed the burden of complainants' decree.
But if I am correct in holding that the presumption arising from the severance of the title of the mortgaged property was that the several tracts remained proportionately liable for the debt, then Mr. Linn had notice that lot 3 was primarily liable for at least its proportionate part of complainants' decree, namely, $11,628.55. I have already stated the relative value of the lots as found by the master and that the ratable liability of lots 2 and 3 amounted to $21,628.55. Of this, $10,000, the approximate burden of lot 2, had been paid, *Page 54 
leaving lot 3 primarily liable for $11,628.55, and lot 4 for $13,371.45. Linn's executor cannot complain if lot 3 is burdened first with its ratable part of complainants' decree before it is used to make the amount due on his mortgage, and conversely, he can insist that lot 4 bear its share of complainants' decree.
It is necessary to trace the title to the decree. There is no evidence that complainants, when they released lot 2, had knowledge of the assumption agreement or notice to put them on inquiry. So when they released lot 2 for a consideration which approximately equalled the proportionate liability of that lot (taking all three lots as ratably liable for this purpose), they did not relinquish their lien on lot 4. After the petition was filed and after Mr. Linn was aware of the claim of the Monitor Holding Company, he purchased the decree. But he was not adversely affected by his knowledge. Wilson v. Hoffman,50 Atl. Rep. 592. The Dieckmann trustees, as complainants, could transfer to anyone as good a title as they had. Any rule that would restrict them to selling to persons who had no notice of the situation, would seriously affect the value of their decree. The decree is therefore a good lien on lot 4.
One other matter requires notice. Linn's executor now owns the decree in this cause, the second mortgage for $51,250 on lot 3, and he likewise owns lot 3 but not lot 4. As between lot 3 and lot 4, the former is first chargeable with the decree. Have the decree and the second mortgage merged into the title to lot 3? A conveyance of the fee to a mortgagee, or an assignment of the mortgagee to the owner of the land, will not work a merger contrary to his intention. Where his intention cannot be directly shown, an intention that a merger does not take place will be inferred, if a merger would injure him. The deed of the fee to Linn expressly stated that his second mortgage should not merge. The assignment of the decree to him, some months later, did not mention the subject, but the interest he thereby acquired in lot 4 clearly required that the decree be kept alive. The only way in which *Page 55 
the equities between Linn's executor and the Monitor Holding Company, the owner of lot 3, can be worked out is by treating the executor's three titles as still distinct. I adopt that course.
This is the conclusion of the whole matter. Lot 3 is first chargeable to make for Linn's executor (1) $11,628.55 on account of the decree, together with interest from October 18th, 1928, and costs of this proceeding; (2) the amount due on the mortgage made to Linn and dated December 27th, 1928, and (3) the balance due on the decree. If it is not thereby satisfied, lot 4 should then be sold to satisfy whatever may remain unpaid on the decree. To determine the amount, if any, to be made out of lot 4, lot 3 can be appraised, and its value credited against the amounts due. Or else lot 3 can be sold first.
Newcomb v. Lubrasky, 65 N.J. Eq. 125, is an example of a foreclosure of a mortgage held by the owner of the fee. Unless counsel can agree which course should be adopted, I will hear them on this subject, on two days' notice. *Page 56