On December 29th, 1925, the complainant conveyed to the defendant the Copley Development Corporation, a tract of land in the township of Teaneck, county of Bergen, State of New Jersey, containing 47.895 acres. It took back from the grantee, as part of the purchase price, a mortgage dated the same day, in the sum of $207,545. The mortgage contained a release clause, which was subsequently changed by agreement of the parties dated May 27th, 1926. There was also a second mortgage between the same parties, covering the same, and *Page 215 
other, property. The defendant corporation divided the premises into lots, which it proceeded to sell to the public. One of its selling agents was the defendant Iversen. He sold the lots described in Exhibit D-A5.
The bill seeks the foreclosure of the first mortgage, charging that there is a balance of $13,541 due and owing on account of the principal of the mortgage, with interest on that sum at six per cent. from July 5th, 1933. The complainant also claims $57,904.20 paid by it for the redemption of the mortgaged property from the holder of tax sale certificates, with interest on that sum at six per cent., from March 22d 1937, plus the sum of $66, recording fees, paid by it, for recording the assignments of the tax sale certificates, with interest on that sum at six per cent. from March 27th, 1937.
There are forty parties defendants to this suit. Of those defendants, the following answer it: the mortgagor, Copley Development Corporation; Heinrick A. Iversen; George W. Smith; Louis D. Millett and Gertrude V. Millett, his wife; Florence I. Livingstone; Julia K. Dolan and Marie A. Dolan; Florence E. Bothwell and Eugene Saunders; and Anna C. Dyer. On August 23d 1937, a decree pro confesso was taken against the other twenty-nine defendants.
The defendant corporation filed an answer and counter-claim. In its answer it admits the allegations of the complaint, except paragraphs 7, 8 and 55 thereof, which allege the balance of principal due complainant on its mortgage, the interest thereon, the amount paid in connection with the redemption of the tax sale certificates, and the recording fees. These paragraphs were denied. In its counter-claim, the defendant corporation alleges the tender to complainant of eight purchase-money mortgages, covering lots sold by it out of said premises, in lieu of cash for releases.
The defendant Iversen filed an answer and counter-claim, similar to the one filed by the defendant corporation. In his counter-claim Iversen prayed that the complainant be compelled to accept in lieu of cash for releases, the purchase-money mortgages executed by the grantees of lots purchased from the defendant corporation. *Page 216 
Iversen, acting as attorney in fact for George W. Smith, Louis D. Millett and Gertrude V. Millett, his wife, Florence I. Livingstone, Julia K. Dolan and Marie A. Dolan, Florence E. Bothwell and Eugene Saunders, caused his solicitors, Whiting 
Moore, to file answers and counter-claims in their behalf, which are to the same effect, and set up defenses and claims which are similar to his. Neither Iversen, nor any of the defendants for whom he caused counter-claims to be filed, excepting Florence I. Livingstone, appeared at the final hearing. Their solicitors, Whiting Moore, however, did appear, and asked the court to be relieved of further activity or responsibility in the proceedings.
Anna C. Dyer filed an answer to the bill, and also a counter-claim against the defendant corporation and the defendant Iversen. She charges the defendant corporation and Iversen with fraud in connection with the sale of the lots to her, and seeks a return of the moneys paid by her to Iversen on account of her purchase. The defendants the Copley Corporation and Iversen filed answers to her counter-claim denying the allegations of fraud.
The purchase-money mortgages which the defendants want the complainant to accept in lieu of cash for releases were executed by: Florence I. Livingstone, two mortgages; Halfried M. Lindberg, one mortgage; John S. Rice and Eva I. Rice, his wife, one mortgage; Louis D. Millett and Gertrude V. Millett, his wife, one mortgage; Julia K. Dolan and Marie A. Dolan, two mortgages; Anna C. Dyer, one mortgage.
The defendants Heinrick A. Iversen, George W. Smith, Florence E. Bothwell and Eugene Saunders, made no tenders of any purchase-money mortgages to the complainant. Consequently, no reason appears why their counter-claims should be considered.
The amount claimed by the mortgagee is not disputed. The eight purchase-money mortgages, which the defendant corporation alleges it tendered to the complainant in lieu of cash for releases, aggregate $14,625.
In the year 1932, the defendant mortgagor sought a reduction in the amounts to be paid for releases. In answer to *Page 217 
such request, the complainant, by letter dated February 27th, 1932, said:
"Your letter of February 8th requesting a reduction in the amounts necessary to release remaining lots in your development in Teaneck was presented to the directors of this Company at a meeting held on the 25th instant, and after careful consideration, I am instructed to inform you that this Company is not prepared at this time to make any definite concession in the present release agreement, but will give consideration to amounts to be paid for releases of individual plots upon submission of any sales that may be made in the future to the end that whenever it is considered possible and advisable, plots may be released at less than the amounts agreed upon.
"We trust this arrangement will be satisfactory to you."
In 1934, the defendant corporation again requested a reduction in the amounts demanded for releases, and complainant, by letter dated October 3d 1934, said:
"Your letter of September 17th requesting reduction in the release agreement covering your property in the Copley Estates under mortgage held by this Company, was submitted to the directors at a meeting held yesterday afternoon, and I am instructed to advise you that this Company will, until further notice, agree to release plots in the said development at the rate of seventy per cent. (70%) of the present prices listed in the Release Agreement, except in case of specific instances, where good ground can be shown for requests for lesser amounts, each case to be treated on its merits."
In the course of the year 1934, the defendant corporation submitted a proposition to the complainant mortgagee whereby it, the defendant corporation, proposed to sell lots from the mortgaged premises, and, in payment, or part payment, thereof, would take purchase-money mortgages which the grantees would execute directly to the complainant, as mortgagee, in return for which, the complainant would be required to release such mortgages from the lien of its blanket mortgage and from the lien of its tax sale certificates. In answer to that proposition, the complainant, by letter dated November 16th, 1934, said:
"Although we strongly object to your deeding property subject to our blanket mortgages, we are willing, in order to help you make sales of the property, to take first mortgages on individual lots or *Page 218 
group of lots (in no case less than 50-foot lots) from the new purchasers, the amounts of these new mortgages to be the total owing us for the release prices from the blanket mortgages and the tax liens, and to be taken in payment therefor. Interest on the release prices and taxes paid by us subsequent to the date of the tax liens to be paid in cash."
Between the dates of this letter last mentioned, November 16th, 1934, and September 12th, 1936, complainant accepted thirty-three mortgages made directly to it, as mortgagee, by purchasers of lots covered by its blanket mortgage, and it thereupon released fifty-eight of the mortgaged lots. Between October 15th, 1936, and March 15th, 1937, the defendant sold and conveyed seventeen lots in eight parcels, from the mortgaged premises and took back from the purchasers eight purchase-money mortgages therefor, which had been made directly to the complainant as mortgagee. In the meantime, while these last sales were being consummated, complainant instituted proceedings to foreclose its second mortgage. The defendant corporation paid and satisfied the decree entered in that proceeding. The defendant corporation alleges that upon the settlement of that decree, it offered eight purchase-money mortgages to the complainant, and demanded releases therefor, but the complainant then refused to accept them, and instituted these proceedings.
Complainant says that covering a period from May 19th, 1926, to August 24th, 1934, it executed one hundred and thirty-four releases from the operation of its mortgage; that ninety-seven of those releases were paid for in cash, and thirty-seven of them were executed for other consideration. Taxes and assessments on the mortgaged premises became due in the year 1932, and remained unpaid, and the township of Teaneck subsequently sold the premises for taxes. The sales were held on June 29th, 1934; May 1st, 1936, and February 26th, 1937. In addition to the default in the payment of the taxes and assessments, the principal and interest which had become due on the mortgages remained unpaid.
The complainant stated that because of the defendant corporation's failure to observe the conditions mentioned in its letter of November 16th, 1934, and for the reason of continued *Page 219 
defaults in payments, it filed the bill to foreclose the second mortgage.
The complainant contradicts the defendant's assertions about having knowledge of the form and the execution of the eight mortgages and says it was not aware of the existence of those mortgages until March 31st, 1937, when they were forwarded to it from the county clerk's office in Bergen county. It says that the defendant corporation never consulted it about the form or execution, or acceptance of them. It returned the eight mortgages to the mortgagors on July 12th, 1937.
Is the complainant required to accept the eight mortgages in lieu of cash for releases? And is the defendant corporation, or the mortgagors in the eight mortgages, entitled to have the premises described in those eight mortgages, released from the operation of the complainant's mortgage? A careful consideration of all the evidence in this case leads me to answer both questions in the negative.
The defendant corporation argues that prior to its refusal to accept the rejected mortgages, the complainant had accepted from it certain purchase-money mortgages in lieu of cash for releases. It claims that such acceptances, in effect, amounted to a custom; and that, under the circumstances, it was entitled to notice from the complainant of any change in the form of the consideration for the releases; and since the complainant failed to give such notice, it is, therefore, estopped from refusing to accept such purchase-money mortgages in lieu of cash for releases. But the evidence on behalf of the defendant falls far short of establishing such facts as would justify the application of the principle of equitable estoppel in its favor.
It stresses the contents of complainant's letter of November 16th, 1934. But the complainant contends that its letter is ineffectual to change the terms and conditions of the release agreement, and raises the additional point that there is no valid consideration supporting it. Von Alberti v. Bierman,117 N.J. Law 431; Levine v. Blumenthal, Ibid. 23; McKinstry v. Runk,12 N.J. Eq. 60; O'Connor v. Meskill, 39 Atl. Rep. 1061;Chatsworth Estates Company of New Jersey v. Chatsworth EstatesCompany of New York, 121 Atl. Rep. 517 *Page 220 
I feel that the complainant's acceptance of purchase-money mortgages, in lieu of cash for releases, was a mere accommodation gratuitously extended by it to the defendant corporation in order to help it make sales of its property. It says its reason for accepting some purchase-money mortgages instead of cash for releases, was because the defendant corporation was somewhat in financial straits due to the depressed economic conditions, and its first and second mortgage accounts were in arrears; and that the taxes from 1932, affecting the mortgaged premises, had become due, in consequence of which the mortgaged premises were eventually sold for unpaid taxes.
The fact that the complainant in certain instances accepted purchase-money mortgages for releases, did not, a fortiori, impose upon it the obligation of doing so in every case which suited the convenience of the defendant corporation mortgagor. The extension of that privilege in some cases would not bar the complainant of the right of insisting upon being paid cash for releases in accordance with the schedule of prices fixed in the release clause in its mortgage. The letter of November 16th, 1934, specifically states that foreclosure proceedings would be withheld until March 1st, 1935, upon two conditions: (1) that within the time mentioned, the mortgagor would not make any conveyances of properties unless the same had been released from the lien of complainant's mortgages and tax liens; (2) that all interest in arrears be paid in full by the mortgagor before March 1st, 1935, by installments of substantial amounts on account at regular intervals. The evidence shows the conditions imposed were ignored.
The defendant corporation's president, Myron Hendee, admitted that the conditions were not complied with by the mortgagor. The letter dated November 16th, 1934, requests that interest on the release prices and taxes paid by the complainant subsequent to the date of the tax liens, be paid in cash. No cash was tendered in accordance with that stipulation.
The evidence shows that the thirty-seven mortgages accepted by complainant for releases in lieu of cash, were all subject to *Page 221 
preliminary negotiations and consideration before acceptance; that there were other mortgages offered in lieu of cash which were not acceptable and were rejected. The president of the defendant corporation admitted that there were preliminary negotiations with the complainant regarding the acceptance or rejection of purchase-money mortgages in lieu of cash for releases in some of the cases where such mortgages had been accepted. He also admitted that one of the requirements laid down by the complainant with respect to such mortgages was that each should be accompanied by a title policy or a certificate of a title searcher satisfactory to the complainant; and that those purchase-money mortgages submitted to, and accepted by, the complainant, were in compliance with this requirement of the complainant; and that in each case the amount of the mortgage would be considered as against the value of the property. He admitted that no title policies or searchers' certificates accompanied the eight mortgages involved in this suit; and said that he personally had nothing to do with the submission of the mortgages to the complainant.
Evelyn Murphy, on behalf of the complainant, testified that each case was submitted to the complainant for consideration on its individual merits; that one of the conditions attached to the acceptance of purchase-money mortgages in lieu of cash for releases, was to have title to the property covered by such mortgages insured; that such policies were submitted in connection with all purchase-money mortgages offered to and accepted by the complainant; that this had not been done with the eight purchase-money mortgages the mortgagor now seeks to have the complainant accept; and that at no time did the mortgagor inform the complainant that it contemplated taking the said purchase-money mortgages and offer them to complainant in lieu of cash for releases.
In order to establish such a custom as the defendant mortgagor said existed between it and the complainant, the evidence should be certain and uncontradictory. Matarani v. Reading Co.,119 N.J. Law 43. *Page 222 
Upon receipt of the eight mortgages from the county clerk's office, Miss Murphy wrote to Iversen, and the mortgagors, stating that Iversen had no authority to take purchase-money mortgages on behalf of the complainant; and that he had no authority whatsoever to act for the complainant in the premises (ExhibitC-7).
Halfried M. Lindberg, one of the mortgagors, testified that she never authorized the defendant Iversen to tender her mortgage to the complainant in lieu of cash for releases. The defendant Anna C. Dyer testified that she knew nothing at all about the complainant's superior liens affecting the property. She purchased from the defendant corporation, through the defendant Iversen; she questioned the validity of the mortgage executed by her at the instance of Iversen. In her counter-claim against the defendant corporation and Iversen, she prays for a recission of the mortgage on the ground of misrepresentation and fraud. I am convinced that the execution of the mortgage by Miss Dyer was effected through misrepresentation. She was unfamiliar with realty conveyances and transactions. She was without knowledge of the contents of the mortgage handed her by Iversen to sign. He fraudulently represented to her when she executed it that it was her deed. Under the circumstances, I feel that she is entitled to the relief she seeks herein. Iversen never told her that the property she was purchasing was encumbered with prior liens in the nature of mortgages and taxes. In fact he led her to believe the property was unencumbered. He imposed upon her credulity and innocence.
Two mortgages of Florence I. Livingstone are included in this suit. Her testimony is substantially the same as that told by Miss Lindberg and Miss Dyer. Iversen misrepresented the facts to her about the liens against the property. He did not inform her that the mortgages which she executed were to be submitted to the complainant for releases. May S. Smith submitted testimony substantially to the same effect. She says that Iversen misrepresented the situation to her and gave her no information about the prior liens of the complainant covering the property purchased by her. Iversen told *Page 223 
her that she was buying property free and clear of all encumbrances.
While the negotiations to purchase were going on between these ladies and the defendant corporation, the second mortgage on the property given by the defendant corporation was being foreclosed by the complainant.
I am convinced that the complainant is entitled to the relief it seeks herein, and I shall advise an order to that effect. The defendants, in my opinion, have failed to show such facts as would entitle them to the relief prayed for against complainant in their respective counter-claims, and the same will be ordered dismissed. The complainant concedes that the order of sale of the different lots must preserve the equitable rights of the purchasers from the mortgagor, and the complainant is willing that such rights be preserved. Hall v. Home Building Co.,37 Atl. Rep. 1019; Dieckmann v. Walser, 112 N.J. Eq. 46. *Page 224